Elizabeth CASEY, Executrix of the Estate of William Casey, Appellee,

v.

GAF CORPORATION, Asbestos Corp., Ltd., Bell Asbestos Mines, Ltd., Rapid American Corporation, Turner & Newall, Ltd.

Appeal of: GAF Corporation.

Marie A. Declerico, Executrix of the Estate of Anthony Declerico, Appellee,

v.

GAF Corporation, Bell Asbestos Mines, Ltd., Asbestos Corporation, Ltd. Brinco Mining Company (Formerly Cassiar Asbestos Corporation), Turner & Newall and U.S. Gypsum, Peltz–Rowley Chemical Company.

Appeal of: GAF Corporation.

Rose Hopwood, Appellee,

v.

GAF Corporation, Turner & Newall, Ltd.,

Appeal of: GAF Corporation.

Augustus Pepe, Administratrix of the Estate of Mary Pepe, Appellee,

v.

GAF Corporation, Asbestos Corporation, Ltd. and Bell Asbestos Mines, Ltd., Turner & Newall Ltd.

Appeal of: GAF Corporation.

Superior Court of Pennsylvania.

Submitted Jan. 6, 2003.

Filed June 11, 2003.

Therese M. Keeley, Philadelphia, for GAF Corp., appellant.

Joseph G. Derespino, Philadelphia, for Turner & Newall, appellee.

Steven B. Barrett, Lansdale, for Casey, Declerico, Hopwood and Pepe, appellees.

BEFORE: BENDER, MONTEMURO *, & BECK, JJ.

OPINION BY BENDER, J.:

¶ 1 G–1 Holdings, Inc., f/k/a GAF Corporation (GAF), appeals from the April 18, 2000 order [1] that, *inter alia,* granted the plaintiffs'/appellees' Motion to Enforce Settlement and entered judgment against GAF in the amount of $155,443.14. We affirm.

¶ 2 The matter before us involves four consolidated cases [2] in which the individual plaintiffs, consisting of persons alleging asbestos-related injuries or their spouses, filed suits against the various corporate defendants. At all relevant times, the corporate defendants were members of the Center for Claims Resolution (CCR), a non-profit organization that acted as each member's exclusive agent in evaluating and settling the plaintiffs' asbestos-related claims. GAF, the appellant herein, is one of the corporate defendants and was a CCR member at the time these cases were settled. The remaining corporate defendants and the plaintiffs are the appellees herein.

¶ 3 CCR, although not a party in this case, submitted an appellees' brief on be-

---

* Retired Justice Assigned to the Superior Court.

1. The four cases herein were consolidated at the trial court level and the order appealed from here pertains to these four consolidated cases.

2. Any reference hereinafter to this "case," in the singular form, refers to all four consolidated cases.

half of the corporate defendants/appellees. Before describing the history of this case, it is helpful to describe CCR's role in this case and other asbestos litigation involving its member corporations. CCR is a Delaware nonprofit corporation formed in 1988 to act as a "claims handling facility for its (now) sixteen member corporations named as defendants in asbestos personal injury suits." Affidavit of William R. Hanlon, 4/7/00, at ¶ 3. CCR and its member corporations are governed by the "Producer Agreement Concerning Center for Claims Resolution" dated September 28, 1988, as amended effective February 1, 1994 (Producer Agreement). *Id.* at ¶ 4. Under the Producer Agreement, each member designated CCR "as its sole agent to administer and arrange on its behalf for the evaluation, settlement, payment or defense of all asbestos-related claims against such" member. Producer Agreement, § IV, ¶ 1. Additionally, under the Producer Agreement, each member explicitly authorized CCR to calculate and allocate the percentage share and costs of settlement attributable to each member. *Id.* at § IX, ¶ 2, & Attachment A. Attachment A to the Producer Agreement provides for the specific method of allocating each member's percentage share in any given case. In turn, each member corporation is liable for paying its percentage share and costs allocated to it. CCR acts as a "conduit for the payment by its members (and/or their insurers) of claims asserted against them. It receives funds from its members under an obligation to pay those funds to plaintiffs in settlement of claims settled by the CCR acting as agent for its members." Affidavit of William R. Hanlon at ¶ 12. GAF was a member corporation of CCR from 1988 until January 17, 2000.

¶ 4 The pertinent history of this case is as follows. Acting as the sole agent of each member defendant corporation, including GAF, CCR negotiated a settlement with the plaintiffs on behalf of all the member defendant corporations in the aggregate amount of $480,000. On December 7, 1999, CCR and the plaintiffs entered into a settlement agreement (the "Settlement Agreement"), which was confirmed in writing on December 15, 1999. The plaintiffs executed releases, which expressly released the corporate defendants, including GAF, and the plaintiffs forwarded these releases and other pertinent documents to CCR with a request for payment of the settlement amount.

¶ 5 In accordance with the Producer Agreement, CCR allocated percentage shares of liability to each member defendant corporation. All members except for GAF forwarded their shares to CCR for payment to the plaintiffs. On March 2, 2000, CCR sent a check to plaintiffs in the amount of $324,556.86, *i.e.*, $155,443.14 less than the full settlement amount. In a letter accompanying the check, CCR explained that the amount of the check constituted payment of the apportioned shares owed under the settlement by all of the defendants except GAF. CCR explained that GAF had refused to pay its apportioned share in the amount of $155,443.14.

¶ 6 CCR terminated GAF's membership effective January 17, 2000, purportedly for GAF's failure to pay its allocated share in these and other asbestos cases. Despite the termination of GAF's membership, the Producer Agreement provides that a corporation whose membership in CCR is terminated is obligated to "continue to have and to honor all of the obligations incurred by it hereunder or on its behalf as a member prior to the effective date of its membership termination." Producer Agreement, § III, ¶ 3.

¶ 7 As a result of the shortfall in the settlement payment due to GAF's failure to proffer its apportioned share, the plain-

tiffs filed a motion entitled, "Motion to Enforce Settlement Against GAF Corporation and Its Non–Party Agent Center for Claims Resolution," on March 14, 2000 (sometimes hereinafter, "First Motion to Enforce Settlement") in the Court of Common Pleas of Montgomery County. In their motion, the plaintiffs asserted that a settlement had been reached with the defendant corporations represented by CCR, but CCR failed to pay $155,443.14 of the agreed upon settlement amount. The motion further indicated that CCR claimed the shortfall to be GAF's responsibility, as its apportioned share, which GAF refused to pay. The plaintiffs sought an order directing payment from either GAF or CCR in the amount of the shortfall.

¶ 8 On March 15, 2000, the Honorable William J. Furber issued a Rule to Show Cause and Order for Hearing. CCR filed an answer in which it asserted GAF's liability for payment of its apportioned share. GAF filed an answer denying its liability and attached the Producer Agreement to its answer. On April 13, 2000, Judge Furber held a hearing. As Judge Furber explained:

> No witnesses were called at the hearing, but GAF agreed it was undisputed that a settlement was entered into between plaintiff[s] and CCR, memorialized in the exhibits attached to plaintiffs' Motion. There was no dispute that the sum of $155,443.14 was the share CCR attributed to GAF. GAF also agreed it was a disclosed principal, and that CCR was its agent under the terms of the Producer Agreement. (N.T. 4/13/00 at 23–26).

Trial Court Opinion, 6/22/00, at 2–3. Accordingly, on April 18, 2000, Judge Furber issued an order granting the plaintiffs' motion to enforce settlement in part by entering judgment against GAF in the amount of $155,443.14, plus interest. Judge Furber denied the plaintiffs' motion insofar as it sought relief against CCR.[3]

¶ 9 GAF filed a timely notice of appeal on May 13, 2000. Oral argument was scheduled in this Court for January 10, 2001. However, prior to oral argument, one of the member defendant corporations, Armstrong World Industries, Inc., filed for bankruptcy in federal court and filed a Notice of Bankruptcy Filing and Imposition of Automatic Stay with this Court. Also prior to the scheduled oral argument in this Court, GAF filed for bankruptcy in the United States Bankruptcy Court for the District of New Jersey on January 5, 2001. On January 9, 2001, GAF filed its Notice of Bankruptcy Filing and Imposition of Automatic Stay with this Court, which was the same date we dismissed the appeal pursuant to Armstrong's bankruptcy filing and associated imposition of the automatic stay.

¶ 10 On April 14, 2001, the plaintiffs filed a motion with the United States Bankruptcy Court for the District of New Jersey seeking modification of the automatic stay so that the appeal herein could proceed. On January 29, 2002, Chief Judge Gambardella ordered modification of the automatic stay to allow this appeal to proceed, but she further ordered that no execution on any bond or other enforcement action would be permitted without additional orders from the bankruptcy court.

¶ 11 GAF raises the following three issues in the Statement of Questions Presented portion of its brief:

1. Did the trial court err in ordering [GAF] to pay its supposed "share" of settlement unilaterally determined by the CCR notwithstanding the fact

---

**3.** Judge Furber further denied, without prejudice, Count II of the plaintiffs' motion seeking damages from GAF for intentional interference with contract.

that the CCR was responsible to pay the entire amount of the settlement?

2. Did the trial court err in entering an Order against [GAF] without hearing evidence?

3. Did the trial court err in ruling on the Motion to Enforce Settlement notwithstanding the existence of ongoing arbitrations?

GAF's brief at 4 (trial court answers omitted).

■ ¶ 12 Initially, we note the applicable standard of review:

Our standard of review of a trial court's grant or denial of a motion to enforce a settlement agreement is plenary, as the challenge is to the trial court's conclusion of law. We are free to draw our own inferences and reach our own conclusions from the facts as found by the trial court. However, we are only bound by the trial court's findings of fact which are supported by competent evidence.

*Hannington v. Trustees of Univ. of Pennsylvania,* 809 A.2d 406, 408 (Pa.Super.2002) (citations and quotation marks omitted).

¶ 13 First, GAF argues that the trial court erred by ordering GAF to pay its apportioned share to the plaintiffs because it was CCR, not GAF, who entered into the settlement and, therefore, CCR is responsible for paying the settlement amount. GAF does not dispute that CCR was authorized to enter into a settlement with the plaintiffs. *See* GAF's brief at 11–12. However, GAF argues that CCR did not have the authority to obligate GAF to pay the apportioned share amount to the plaintiffs. *Id.* at 12. GAF argues that the plaintiffs' "remedy is to enforce its contract against the CCR—the party with whom [the plaintiffs] contracted." *Id.* at 13.

¶ 14 We conclude initially that this issue is without merit and the trial court correctly found that GAF is directly liable to the plaintiffs for its apportioned share of the settlement. In reviewing this issue, we look to principles of agency law.

■ ¶ 15 The three elements of agency are: (1) "the manifestation by the principal that the agent shall act for him;" (2) "the agent's acceptance of the undertaking;" and (3) "the understanding of the parties that the principal is to be in control of the undertaking." *Basile v. H & R Block, Inc.,* 563 Pa. 359, 761 A.2d 1115, 1120 (2000) (citations omitted). "[A]gency results only if there is an agreement for the creation of a fiduciary relationship with control by the beneficiary." *Id.* (citation and omitted).

In general, a principal-agent relationship is determined by the agreement made by the parties defining the circumstances under which the agent may act for the principal. Implicit in this relationship is the consent by the principal that one may act on his or her behalf and is subject to his or her control. RESTATEMENT (SECOND) OF AGENCY, § 1, Comment b (1958) .... Where an agent has authority to exercise discretion, the exercise thereof will bind the principal. *Nuzum v. Spriggs,* 357 Pa. 531, 55 A.2d 402 (1947).

*Darlington v. County of Chester,* 147 Pa. Cmwlth. 177, 607 A.2d 315, 320 (1992).

¶ 16 As the trial court recognized, the Producer Agreement created an actual agency relationship, with CCR as the agent and GAF and other member corporations as the principals. Accordingly, CCR had the express authority to act in accordance with the terms of the Producer Agreement. The pertinent portions of the Producer Agreement, which establish CCR's authority to act on behalf of its

member corporations, including GAF, include the following.

The Center shall administer and arrange for the evaluation, settlement, payment or defense of all asbestos-related claims in accordance with the provisions of the [Producers] Agreement and Attachment A hereto, applicable law and professional standards....

Producer Agreement at § II, ¶ 1. The signatories to the Producer Agreement, *i.e.*, GAF and other member corporations, expressly granted CCR the authority to settle, pay, or defend asbestos-related claims:

By becoming a signatory to the [Producer] Agreement and a member of the Center, each Participating Producer hereby designates the Center as its sole agent to administer and arrange on its behalf for the evaluation, settlement, payment or defense of all asbestos-related claims against such Participating Producer. As sole agent, the Center shall have exclusive authority and discretion to administer, evaluate, settle, pay or defend all asbestos-related claims....

*Id.* at § IV, ¶ 1. The above language establishes CCR's express authority to settle this and other claims that existed against GAF at the time it was a member corporation. Indeed, GAF further agreed, under the Producer Agreement, to "honor all of the obligations incurred by it [under the Producer Agreement] or on its behalf as a member prior to the effective date of its membership termination, including any retroactive adjustments of its percentage shares of liability payments and allocated expense made pursuant to Attachment A [of the Producer Agreement]." *Id.* at § III, ¶ 3.

¶ 17 The language of the Producer Agreement also establishes CCR's express authority to apportion liability among its member corporations and establishes each member's obligation to pay its apportioned share:

Liability payments and allocated expenses shall be apportioned to each Participating Producer from the date such Producer becomes a signatory to the Agreement and a member of the Center. *Such apportionment shall establish the responsibility of each Participating Producer for a percentage share of liability payments and a percentage share of allocated expenses attributable to each claim handled by the Center as sole agent for such Participating Producer* under Section IV hereinabove. Each Subscribing Producer's percentage shares of liability payments and allocated expenses shall be established as provided in Attachment A hereto, and shall be subject to modification only in the manner and to the extent set forth therein. To the extent that a Participating Producer's percentage shares of liability payments and allocated expenses attributable to a particular asbestos-related claim are not paid in a timely manner by one or more of its Insurers, or any other agreement, such *Participating Producer shall pay in a timely manner the percentages of liability payments and allocated expenses in question.*

*Id.* at Article VI (emphasis added). "Liability payments" include any amounts paid in settlement of asbestos-related claims. *Id.* at Article I, ¶ IV. According to the unambiguous language of the Producer Agreement, CCR had the express authority to settle the plaintiffs' claims, CCR had the express authority to apportion liability among the member defendant corporations, and GAF, as a member during the time the instant case was settled, became responsible for payment of the settlement share and expenses allocated to it by CCR.

¶ 18 In addition to the express authority granted to CCR in the Producer Agreement, CCR had apparent authority to negotiate and enter into a settlement with the plaintiffs on behalf of its member defendant corporations. The following is helpful in this regard, albeit in the context of a lawyer acting as an agent on behalf of his client to enter into a settlement with a third party:

> The doctrine of apparent authority permits a settlement agreement to be enforced where a third party reasonably believes that the principal's lawyer, the agent, had the authority to settle the case even though the lawyer fraudulently represents that he has such authority. *Rothman v. Fillette*, 503 Pa. 259, 469 A.2d 543, 545 (1983). In *Rothman*, the plaintiff's lawyer settled the plaintiff's case without the plaintiff's express consent, and forged the plaintiff's signature on the release and on the check from the defendants' insurer.
>
> The *Rothman* Court ruled that, even though plaintiff's lawyer committed a fraud on plaintiff, plaintiff's lawyer had the apparent authority to settle with the innocent opposing party. *Id.* at 546. The Court reasoned that since the plaintiff had accredited his lawyer, he must bear the loss and cannot use the agent's lack of authority as a basis for shifting the principal's losses onto the innocent third party. *Id.* at 546. The Court emphasized that the fact that the agent has wronged his principal does not insulate the principal *vis a vis* the innocent third party who had no responsibility for the agent's conduct.

*Hannington*, 809 A.2d at 408–409 (footnote omitted).

■ ¶ 19 In the instant case, a finding of agency and authority on the part of CCR to settle and apportion liability to its member defendant corporations is abundantly clear. Unlike *Rothman*, there is no evidence of fraud on the part of CCR in acting as the agent of its member corporate defendants. Accordingly, not only did CCR have express authority under the Producer Agreement, it had apparent authority in that the plaintiffs reasonably (and correctly) believed that CCR had the authority to settle on behalf of the corporate defendants.

■ ¶ 20 With CCR's authority as an agent clearly established, we further conclude that GAF failed to establish any direct liability on the part of CCR to the plaintiffs. According to the plain language of Article VI of the Producer Agreement, cited above, the obligation to pay apportioned shares of liability lies with each member defendant corporation, not CCR. Moreover, "[i]t is a basic tenet of agency law that an individual acting as an agent for a disclosed [principal] is not personally liable on a contract between the [principal] and a third party unless the agent specifically agrees to assume liability." *B & L Asphalt Indus., Inc. v. Fusco*, 753 A.2d 264, 270 (Pa.Super.2000) (citation omitted, brackets in original). *See also* RESTATEMENT (SECOND) OF AGENCY § 144 (1958) (stating that a "disclosed or partially disclosed principal is subject to liability upon contracts made by an agent acting within his authority if made in proper form and with the understanding that the principal is a party"); *Hannington*, 809 A.2d at 408–409 (indicating principal obligated to pay settlement amount to third party with whom principal's agent negotiated settlement agreement with apparent authority). Instantly, there is no question that GAF was a disclosed principal because the plaintiffs specified GAF as a defendant. Also, there is no evidence that CCR, as GAF's agent, assumed any liability under the Settlement Agreement. At all times, CCR acted on behalf of GAF and its other

member defendant corporations in accordance with the Producer Agreement. Indeed, CCR acted merely as a "conduit" for payment of claims by member defendant corporations. *See* Affidavit of William R. Hanlon at ¶ 12.

¶ 21 Finally, as the trial court correctly noted, CCR was never a party to these cases and, therefore, the trial court had no authority to enter any judgment against CCR. *See, e.g., Shay ex rel. Shay v. Flight C Helicopter Serv., Inc.*, 822 A.2d 1, 11 (Pa.Super.2003) (concluding that a trial court order was void *ab initio* insofar as it directed a non-party to pay damages). For all of the above reasons, the trial court did not err by holding GAF directly liable to the plaintiffs.

■ ¶ 22 In its second issue, GAF argues that the trial court violated GAF's due process rights by not affording GAF an opportunity for discovery or an opportunity to present evidence at the hearing on April 13, 2000. GAF points to no place in the record which would indicate that it preserved this issue for appeal by, for example, objecting to the purported lack of opportunity to conduct discovery or present evidence at the hearing. Moreover, as the plaintiffs point-out, Judge Furber issued his Rule to Show Cause on March 15, 2000, following the plaintiffs filing of their motion to enforce settlement. The hearing was scheduled for April 13, 2000. Therefore, GAF had approximately one month to request discovery, but failed to do so. Montgomery County Local Rule 302(e) permits any party to demand discovery on motions that raise appealable matters and allows for sixty days to conduct discovery unless the court orders otherwise. GAF did not avail itself of this rule and did not object at the hearing to any purported lack of opportunity to conduct discovery or present evidence. GAF cannot now raise this issue for the first time on appeal in an attempt to shift blame to the trial court by asserting that the trial court violated GAF's due process rights. Accordingly, this issue is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

■ ¶ 23 In its third issue, GAF argues that the trial court erred by entering judgment against GAF in the settlement amount allocated to it by CCR because, at the time the court made this decision, GAF and CCR were in the midst of arbitration proceedings. GAF claims that CCR initiated arbitration proceedings on January 28, 2000, "which sought payment *to the CCR* of monies on account of settlements purportedly made by the CCR on [GAF's] behalf, *including payment obligations that [the plaintiffs] seek[ ] in this action.*" GAF's brief at 17 (emphasis in original). GAF states that the trial court should have deferred resolution of the issue of the disputed share amount to the arbitrators. GAF argues in part as follows:

> Plaintiff, acting in cooperation with the CCR, urged the trial court to grant the relief that the CCR was already seeking in these ADRs. In essence, Plaintiff and CCR were asking [GAF] to pay its alleged share up front and then determine whether that payment was proper in the ADR. However, the arbitrator had ruled that [GAF] should not have to pay its purported "shares" in advance of the resolution of the arbitration. The arbitrator's decision was affirmed by a New Jersey state court.

*Id.* at 18. GAF fails to provide any substantiation for these bald allegations. GAF provided no copies of these decisions and, in any event, the rulings of the arbitrator and the New Jersey court are not a part of the record herein.

¶ 24 In any event, the issue before Judge Furber was enforcement of the Set-

tlement Agreement, not the propriety of the amount CCR determined to be GAF's share of the settlement. Judge Furber recognized that any disputes between CCR and GAF are to be submitted to arbitration pursuant to Article XIV, § 3, of the Producer Agreement. Judge Furber opined as follows:

> We recognize that CCR's allocation is not final, but it is not for this Court to determine the propriety of the allocation. GAF and the other participating producers agreed to final and binding arbitration to resolve those disputes. We reject GAF's suggestions that either plaintiff should await resolution of those proceedings, or that CCR should pay plaintiffs pending their resolution. As we have decided, CCR is not, itself, liable to anyone. It is empowered to negotiate and settle claims, and when it does that on behalf of all its members, it is the responsibility of those members to pay the share allocated to each. There is no basis in the Producer Agreement or in the law to require the other members of CCR to make up for GAF's default pending the resolution of the arbitration proceedings. To do that would not only be contrary to the agreement, it would discourage both settlements and participation in joint settlement facilities by defendants in mass tort litigation, since members who abide by the agreement would be forced to pay or advance the share of a party which dishonors it.

T.C.O. at 10. We hereby adopt Judge Furber's cogent reasoning on this issue and conclude that GAF's third issue is, therefore, without merit.

■ ¶ 25 Finally, we must address GAF's Motion to Dismiss for Lack of Jurisdiction filed with this Court. Essentially, GAF asserts that this Court has no jurisdiction over this appeal because the plaintiffs' motion to enforce settlement was removed to federal court and later voluntarily dismissed by the plaintiffs, rather than remanded to state court. Accordingly, GAF argues that unless the cases are reinstated in federal court and then remanded to state court, we have no jurisdiction to hear this appeal.

¶ 26 GAF's statement of the relevant procedural history on this issue is misleading. The plaintiffs filed *two* separate motions for enforcement of settlement. The First Motion to Enforce Settlement, as discussed above, was filed against GAF on March 14, 2000. This motion was *never* removed to the federal court. It was a *second* Motion to Enforce Settlement (Second Motion to Enforce Settlement), filed against defendants other than GAF, which plaintiffs filed on May 8, 2001, that was removed to the federal court. Contrary to GAF's assertions, GAF was not a party to the removal action associated with the Second Motion to Enforce Settlement. Indeed, GAF does not differentiate between, or even mention, the existence of two separate motions to enforce settlement in its motion to dismiss. GAF's oversight in this regard is, frankly, misleading. Pursuant to our review of the record, it is clear that the motion to enforce settlement against GAF, *i.e.*, the First Motion, was never removed and we did not, therefore, lose jurisdiction over this proceeding in the manner asserted by GAF. After the bankruptcy court lifted the automatic stay to allow GAF's appeal of the First Motion to Enforce Settlement to proceed, the appeal was properly reinstated in this Court. Accordingly, we deny GAF's Motion to Dismiss for Lack of Jurisdiction.

¶ 27 For the foregoing reasons, we affirm the April 18, 2000 order of the Honorable William J. Furber of the Court of Common Pleas of Montgomery County.

¶ 28 Order affirmed. Motion to Dismiss for Lack of Jurisdiction denied.