J-A14040-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MICHELLE T. SEIDNER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| HOWARD FINKELMAN, ESQUIRE AND | : | |
| BOCK & FINKELMAN, P.C. | : | |
| | : | |
| Appellees | : | No. 716 EDA 2017 |

Appeal from the Judgment Entered February 15, 2017
in the Court of Common Pleas of Philadelphia County
Civil Division at No.:  October Term, 2012 No. 02883

| | | |
|---|---|---|
| MICHELLE T. SEIDNER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| HOWARD FINKELMAN AND BOCK | : | |
| AND FINKELMAN, P.C. | : | |
| | : | |
| Appellants | : | No. 808 EDA 2017 |

Appeal from the Judgment Entered February 15, 2017
in the Court of Common Pleas of Philadelphia County
Civil Division at No.:  October Term, 2012 No. 002883

BEFORE:   GANTMAN, P.J., SHOGAN, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                           **FILED AUGUST 31, 2018**

Appellant, Michelle T. Seidner, appeals from the judgment entered in

favor of Appellees, Howard Finkelman, Esquire (Finkelman), and Bock &

Finkelman, P.C. (Law Firm).  Appellees have filed a cross-appeal.  We affirm.

_____
*   Retired Senior Judge assigned to the Superior Court.

This case has a long and complicated history, which the trial court reviews thoroughly in its October 4, 2016 opinion. (*See* Trial Court Opinion, 10/04/16, at 1-18). We provide the following pertinent factual history and procedural background for the benefit of the reader.

Appellant and Irving Steven Levy had been married for nineteen years at the time Appellant commenced the divorce action in April 2004. When she filed the complaint, Appellant was an assistant district attorney in Philadelphia, where she had been employed for over thirty-three years. Levy was a partner at White & Williams, P.C., where he also had been employed for decades. Appellant's then-divorce attorneys engaged in discovery regarding the assets and liabilities of the marital estate and Levy. On July 20, 2006, the court entered an order approving the grounds for divorce pursuant to 3301(c) of the Divorce Code and maintaining that a divorce decree would be entered after all equitable distribution and financial matters had been completed.

On October 3, 2008, Appellant retained the Law Firm to represent her in the still-pending divorce action. She signed a written retention agreement with the Law Firm, which was signed by Finkelman. (*See* Exhibit 40, Retention Agreement, 10/03/08, at unnumbered page 2). When Appellant first met with Finkelman, she told him that her objectives were to obtain a divorce, preserve her savings, and obtain financial protection for both her children and herself. (*See* N.T. Trial, 6/07/16, at 153-54). She repeatedly advised Appellees that she "wanted to make sure [her] kids are taken care of[.]" (*Id.* at 106; *see*

*also id.* at 107; Exhibit 2, Email Correspondence Between Appellant and Finkelman, 11/10/08, at 3 ("I must make sure that my kids are protected for the future."); Exhibit 3, Email Correspondence from Appellant to Finkelman, 11/05/08, at 1 ("We need to check [Levy's] insurance policies . . . to be sure my kids are taken care of.")).  This was consistent with her representation to two of her prior lawyers, Margaret Klaw, Esquire, and Gerald Schorr, Esquire. (**See** Exhibit 96, Email Correspondence between Appellant and Attorney Klaw, 1/16-1/22/07, at unnumbered page 6 ("I want to make sure the kids are the beneficiaries of everything."); Exhibit 98, Email Correspondence from Appellant to Attorney Schorr, 7/07/08 ("[Levy] must maintain Life Insurance []policies for my children with them as sole beneficiaries that I get to see and to hold for them in the amount of 5 million each.[](or whatever you think is reasonable amount)[.]").

On November 4, 2008, Levy advised Appellant that "he had Stage 4 pancreatic cancer and that the doctor said he had six months to two years to live." (N.T. Trial, 6/07/16, at 98).  On December 31, 2008, Levy petitioned to bifurcate the divorce proceedings, because of his wish to marry his long-time girlfriend before he passed away.  (**See** Petition to Bifurcate, 12/31/08, at unnumbered pages 2-3 ¶ 14).  On January 5, 2009, Appellant told Appellees that she wanted to file a motion pursuant to 23 Pa.C.S.A. § 3502(d)[1] to

---

[1] Section 3502(d), equitable division of marital property, provides:

- 3 -

preserve her interest as the beneficiary of the life insurance policies. On January 6, 2009, Levy advised Appellant that he was drafting his will and wanted to change the beneficiary of the life insurance policies to a trust for the benefit of the children. He proposed that, if Appellant agreed to complete the marital litigation, he would make her the trustee. (*See* Exhibit 45, Email Correspondence between Appellant and Levy, 1/05-1/06/09, at unnumbered page 1; N.T. Trial, at 103). He also offered a proposal for dividing the marital assets to resolve the divorce action. (*See* Exhibit 45, at unnumbered pages 1-2). Although Appellant voiced a concern to Appellees about who would be the trustee on their children's trust, she did not communicate any worries about not being the beneficiary of the life insurance policy, even though she knew that this would occur if the trust were created. (*See* N.T. Trial, at 103-04, 107).

On January 27, 2009, Levy provided a proposal for the divorce action's resolution, which confirmed that Appellant would remain the beneficiary of his

---

**(d) Life insurance.**—The court may direct the continued maintenance and beneficiary designations of existing policies insuring the life or health of either party which were originally purchased during the marriage and owned by or within the effective control of either party. Where it is necessary to protect the interests of a party, the court may also direct the purchase of, and beneficiary designations on, a policy insuring the life or health of either party.

23 Pa.C.S.A. § 3502(d).

- 4 -

pension, proposed the creation of the life insurance trust for the children, and suggested that they jointly request expedited equitable distribution. (**See** Exhibit 46, Correspondence from Levy's Counsel to Finkelman, 1/27/09, at unnumbered page 2). Appellant authorized Appellees to make a counter-proposal, which included establishing a life insurance trust naming the children as beneficiaries. (**See** Exhibit 47, Correspondence from Finkelman to Levy's Counsel, 2/05/09, at 1; N.T. Trial, at 180-81).

On February 9, 2009, Appellees provided Appellant with a proposed memorandum in response to Levy's petition for bifurcation, which stated that she would agree to bifurcation if she were provided with adequate economic protections. (**See** Exhibit 50, Email Correspondence between Appellant and Appellees, 2/09/09, at unnumbered page 1 (Email re proposed brief opposing bifurcation in which Appellant stated that brief is "great"); **id.** at unnumbered page 9 (Proposed Brief Opposing Bifurcation on basis of lack of "sufficient economic protection" for Appellant); **id., generally**, at 2-9).

On February 10, 2009, the court conducted a bifurcation hearing. At the hearing, consistent with the language of the memorandum, Appellees presented the economic protections required by Appellant. (**See** Exhibit 51, N.T. Bifurcation Hearing, 2/10/09, at 32-36). Levy agreed to all of them. (**See id.** at 34-35). Pursuant to the agreement approved by Appellant, and the order granting bifurcation, she maintained control of approximately seventy-five percent of the marital estate, which included her own pension,

deferred compensation, bank accounts, the majority of the liquid assets of the marital estate, the marital home, her beneficiary status on all of Levy's pension and 401(k) accounts, and alimony and child support from Levy in the amount of over $4,400.00 per month. (*See id.* at 10-11). An irrevocable life insurance trust for the children was made the beneficiary of Levy's life insurance policies. (*See id.* at 10). The court granted the petition for bifurcation and entered a divorce decree that day.

Appellant testified at trial that she fired Appellees immediately after the bifurcation hearing because she felt that they had not properly represented her. (*See* N.T. Trial, 6/07/16, at 129-35). On March 13, 2009, Finkelman sent Appellant a letter advising her that the Law Firm could not continue to represent her due to differences of opinion in her case. (*See* Exhibit 53, Correspondence from Finkelman to Appellant, 3/13/09, at unnumbered pages 1-2). She hired new counsel and timely appealed the order granting bifurcation and entering the divorce decree. This Court affirmed, finding in pertinent part, that:

> [D]espite her protestations to the contrary, the record clearly reflects that Wife's counsel agreed to the bifurcated divorce decree during the hearing on February 10, 2009. **Counsel attempted to protect Wife's economic interests before consenting to the decree**; those provisions are reflected in the resulting order. The record reflects that the hearing was in the nature of an amicable negotiation toward a mutually-agreeable goal, rather than a contested proceeding. . . .

(**Seidner v. Levy**, No. 1124 EDA 2009, unpublished memorandum at *4 (Pa. Super. filed Feb. 4, 2010), *appeal denied*, 8 A.3d 346 (Pa. 2010)) (emphasis added).

Appellant commenced a breach of contract action against Appellees on October 19, 2012. A mistrial was declared in the first bench trial, due to Appellant's new counsel's disclosure of her settlement demand during the proceeding. The second trial in this matter took place between June 6 and 24, 2016. On October 4, 2016, after ordering and receiving proposed findings of fact from the parties, the trial court entered an opinion, finding in favor of Appellees on the ground that the lawsuit was time-barred under the "gist of the action" doctrine because Appellant's claim, and the evidence at trial, supported a claim for negligence, not breach of contract. The court also found that Finkelman was not a party to the engagement agreement with Appellant. Post-verdict motions were denied. On February 15, 2017, the trial court entered judgment. Appellant timely appealed. Appellees cross-appealed.[2]

We will address Appellant's claims first. She raises two issues for our review:[3]

---

[2] The court did not order the parties to file concise statements of errors complained of on appeal, but it filed an opinion on June 12, 2017. **See** Pa.R.A.P. 1925.

[3] Appellant's reproduced record violates Pennsylvania Rule of Appellate Procedure 2152, which mandates, in pertinent part, that "[t]he reproduced record **shall** contain . . . **relevant** docket entries and any **relevant** related

[1.] [W]hen a legal malpractice action is filed and asserts a claim under a breach of contract theory of liability and not in tort, is the [c]omplaint time barred if it is filed within four years of the attorney's breach of contract to his client?

[2.] [W]as [Finkelman] bound by the engagement agreement between his law firm of which he was the sole partner or shareholder, and which refers to him by name, thus creating obligation on him to perform services, and the client for purposes of assigning liability?

(Appellant's Brief, at 4).[4]

In her first issue, Appellant argues that the trial court erred in finding that, pursuant to the "gist of the action" doctrine, her claim sounded in tort, not breach of contract, and that, therefore it violated the two-year statute of

_____

matter . . . [a]ny **relevant** portions of the pleadings, charge or findings . . . [and] any other **parts** of the record to which the parties wish to direct the particular attention of the appellate court." Pa.R.A.P. 2152(a)(1)-(3) (emphases added). Here, Appellant's twenty-six volume, approximately 9,741 page reproduced record appears to be a copy of the **entire** certified record, which defeats the purpose of providing a reproduced record containing only those portions of the record **relevant** to our review. Although this failure to "conform in all material respects with the requirements of these rules . . ." could result in an appeal's dismissal, we decline to do so. Pa.R.A.P. 2101.

[4] Appellees assert that Appellant waived her issues because she failed to identify entry of judgment in her questions presented or as a section of her argument. (*See* Appellees' Brief, at 57-60). However, it is clear that she is appealing from the judgment entered against her. Therefore, we decline to find waiver on this basis.

limitations.[5, 6]  (**See** Appellant's Brief, at 30-41).  Appellant maintains that the

"gist of the action" doctrine is to be applied only to preclude tort claims when

the action is founded in contract, not to bar breach of contract claims when

the action actually is one in tort.  (**See id.**).  Appellant's claim lacks merit.

We guided by the following legal principles.

> Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. Upon appellate review the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law.  Our scope of review regarding questions of law is plenary.

**Century Indem. Co. v. OneBeacon Ins. Co.**, 173 A.3d 784, 802 (Pa. Super.

2017) (citations omitted).  "Which statute of limitations applies to a cause of

action is . . . a matter of law for the court to determine."  **Wilson v. Transp.**

**Ins. Co.**, 889 A.2d 563, 570 (Pa. Super. 2005) (citation omitted).

> In Pennsylvania, an individual who has taken part in an attorney-client relationship may sue his attorney for malpractice under either a trespass or assumpsit theory, each of which

---

[5] Section 5525 of the Judicial Code sets forth a four-year statute of limitations for breach of contract actions.  **See** 42 Pa.C.S.A. § 5525(a)(8).  Section 5524 sets forth a two-year statute of limitations for an action in tort.  **See** 42 Pa.C.S.A. § 5524(7).

[6] There is no dispute that the statute of limitations began to run on the date Appellant became aware of Appellees' alleged breach of duty, *i.e.*, February 10, 2009.  **See Robbins & Seventko Orthopedic Surgeons, Inc. v. Geisenberger**, 674 A.2d 244, 246 (Pa. Super. 1996) ("In Pennsylvania, the occurrence rule is used to determine when the statute of limitations begins to run in a legal malpractice action.  Under the occurrence rule, the statutory period commences upon the happening of the alleged breach of duty.") (citation omitted).

requires the proof of different elements. In a trespass action alleging legal malpractice concerning a civil matter, the plaintiff must establish three elements in order to recover: (1) the employment of the attorney or other basis for duty; (2) the failure of the attorney to **exercise ordinary skill and knowledge**; and (3) that the attorney's failure to exercise the requisite level of skill and knowledge was the proximate cause of damage to the plaintiff. . . . An attorney will be deemed "negligent" if he or she fails to possess and exercise that degree of knowledge, skill and care which would normally be exercised by members of the profession under the same or similar circumstances.

*Fiorentino v. Rapoport*, 693 A.2d 208, 212 (Pa. Super. 1997), *appeal denied*, 701 A.2d 577 (Pa. 1997) (citations omitted; emphasis added).

In contrast,

A legal malpractice claim based on breach of contract, involves (1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages. With respect to a legal malpractice claim based on breach of contract, this Court has stated the following:

[T]he attorney's liability must be assessed under the terms of the contract. Thus, if the attorney agrees to provide . . . her best efforts and fails to do so, an action in assumpsit will accrue. An attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large.

*Dougherty v. Pepper Hamilton, LLP*, 133 A.3d 792, 796 (Pa. Super. 2016) (citation and quotation marks omitted).

Where . . . a tort claim arises from an initial contractual relationship, tort recovery is permitted:

In general, courts are cautious about permitting tort recovery based on contractual breaches. In keeping with this principle, this Court has recognized the "gist of the action" doctrine, which operates to

- 10 -

preclude a plaintiff from re-casting ordinary breach of contract claims into tort claims.

\* \* \*

However, **a breach of contract may give rise to an actionable tort where the wrong ascribed to the defendant is the gist of the action, the contract being collateral**. The important difference between contract and tort claims is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie from the breach of duties imposed by mutual consensus. In other words, a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts.

*Egan v. USI Mid-Atlantic, Inc.*, 92 A.3d 1, 18 (Pa. Super. 2014) (citation omitted; emphasis added).

The Pennsylvania Supreme Court recently examined how the "gist of the action" doctrine determines whether a cause of action, although arising from a contractual relationship, sounds in contract or tort. *See Bruno v. Erie Ins. Co.*, 106 A.3d 48 (Pa. 2014). There, our High Court stated:

. . . **[T]he mere existence of a contract between two parties does not,** *ipso facto*, **classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract.** Indeed, [the Pennsylvania Supreme] Court has long recognized that a party to a contract may be found liable in tort for negligently performing contractual obligations and thereby causing injury or other harm to another contracting party, *see, e.g.*, *Bloomsburg Mills v. Sordoni*, 164 A.2d 201 (Pa. 1960) (finding evidence sufficient for jury to have concluded architect was negligent in failing to exercise reasonable care in performance of duties imposed by design contract)[.] . . .

Consequently, **a negligence claim based on the actions of a contracting party in performing contractual obligations is not viewed as an action on the underlying contract itself, since it is not founded on the breach of any of the specific executory promises which comprise the contract. Instead, the contract is regarded merely as the vehicle, or mechanism, which established the relationship between the parties, during which the tort of negligence was committed.** *See Zell v. Arnold*, 1830 WL 3261, at *3 (Pa. 1830) (considering action to be in tort since it was for breach of the defendant's duty to perform, in a "workmanly manner," construction activities specified by the construction contract); *Evans v. Otis Elevator Co.*, 168 A.2d 573, 575 (Pa. 1961) ("It is not the contract *per se* which creates the duty [to avoid causing injury to third parties]; it is the law which imposes the duty because of the nature of the undertaking in the contract.")[.]

*Bruno*, *supra* at 69-70 (some citations omitted; some citation formatting provided; emphases added).

In this case, the retention agreement stated, in pertinent part, that "Michael [Galbraith, Esquire,] and [Finkelman] are very optimistic that we will be able to make progress and get this matter resolved for you so that you can close this chapter and move on." (Exhibit 40, at unnumbered page 1). Appellant's complaint alleged that Appellees failed to advise her properly of her rights regarding certain life insurance policies, and protect her claim to them. (*See* Complaint, 5/09/13, at 5 ¶ 15, 6 ¶ 16, 7 ¶¶ 19-20, 8-9 ¶¶ 23, 9-10 ¶¶ 25-26). Appellant did not allege that Appellees "breach[ed] . . . any of the specific executory promises which comprise the contract[,]" but instead alleged that Appellees negligently "perform[ed] contractual obligations[.]" *Bruno*, *supra* at 70 (citation omitted).

At trial, Appellant acknowledged that her "objective was to obtain a divorce, preserve [her] savings, and obtain financial protection for [her] children[.]" (N.T. Trial, at 153-54). She did not argue that Appellees failed to fulfill the objectives, but only challenged the manner in which they achieved them, and whether the advice provided was within the standard of care. Importantly, her expert, Kenneth J. Horoho, Esquire, provided a report in which he asserts that Appellees failed "to exercise ordinary skill and knowledge" when they did not "treat the insurance policies as a marital asset" and "do due diligence regarding the marital estate[.]" (Exhibit 37, Horoho Expert Report, 5/16/16, at 11-12).[7] This conclusion supports a negligence action, not one for breach of contract. *See Bruno*, *supra* at 69-70; *Dougherty*, *supra* a 796; *Egan*, *supra* at 18; *Fiorentino*, *supra* at 212-13. Hence, the trial court properly found that, pursuant to the "gist of the action" doctrine, Appellant's claim sounded in tort and that, therefore, it violated the two-year statute of limitations. *See Century Indem. Co.*, *supra* at 802; *Wilson*, *supra* at 570. Appellant's first issue does not merit relief.[8]

_____

[7] This appears to conflict with the finding of the previous panel of this Court that "[c]ounsel attempted to protect Wife's economic interests before consenting to the decree[.]" (*Seidner*, *supra* at *4).

[8] Neither are we persuaded by Appellant's reliance on *Gorski v. Smith*, 812 A.2d 683 (Pa. Super. 2002), *appeal denied*, 856 A.2d 834 (Pa. 2004), in her reply brief, where she maintains that *Gorski* established that negligence and breach of contract claims have the same elements, and the key issue to be

In her second issue, Appellant maintains that the court erred when it found that Finkelman was not a party to the contract. (**See** Appellant's Brief, at 41-43). We disagree.

"When a trial court's interpretation of a contract is on appeal, our standard of review is *de novo* and our scope of our review is plenary." **Trigg v. Children's Hosp. of Pittsburgh of UPMC**, 187 A.3d 1013, 1018 (Pa. Super. 2018) (citation and internal quotation marks omitted). It is well-settled that "[i]t is a basic tenet of agency law that an individual acting as an agent for a disclosed [principal] is not personally liable on a contract between the [principal] and a third party unless the agent specifically agrees to assume

---

decided in both of them is whether the defendant breached the standard of care. (**See** Appellant's Reply Brief, at 16-17 n.7).

As we stated previously, this Court recently reiterated that in a breach of contract action alleging attorney malpractice, "[t]he attorney's liability must be assessed under the terms of the contract. Thus, if the attorney agrees to provide . . . her best efforts and fails to do so, an action in assumpsit will accrue." **Dougherty**, **supra** at 797 (citation omitted). Here, the agreement provided that Appellees would make progress on Appellant's divorce, meaning they would obtain the divorce, preserve her savings, and obtain financial protection for the children. Appellant does not claim that they failed to perform the agreed-upon terms, she challenges their exercise of judgment, alleging it fell below the standard of care. In light of more recent case law, we decline to read **Gorski** as standing for Appellant's proposition that attorney malpractice and breach of contract require the exact same elements, and that, in a breach of contract action, only an allegation of negligent performance is required. **See id.**; **see also Bruno**, **supra** at 70 ("[A] negligence claim based on the actions of a contracting party in performing contractual obligations is not viewed as an action on the underlying contract itself, since it is not founded on the breach of any of the specific executory promises which comprise the contract.").

liability." ***Casey v. GAF Corp.***, 828 A.2d 362, 369 (Pa. Super. 2003), *appeal denied*, 844 A.2d 550 (Pa. 2004) (citations omitted).

Here, the retention agreement stated, "Please allow this letter to serve as confirmation of **our firm's representation of you** and clarification of the basis upon which **fees will be charged by our firm**." (Exhibit 40, at unnumbered page 1) (emphases added). Based on the foregoing unambiguous language, we conclude that the trial court properly found that Finkelman signed the agreement as an agent of the Law Firm, and is not personally liable. ***See Trigg***, *supra* at *4; ***Casey***, *supra* at 369. Appellant's second claim does not merit relief.[9]

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/31/18</u>

---

[9] Because of our disposition, we do not reach Appellees' issues.