J-A15013-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DAVID HATCHIGIAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| STEIN & TROIANI, A PROFESSIONAL | : | |
| CORPORATION | : | |
| | : | |
| Appellee | : | No. 3315 EDA 2019 |

Appeal from the Order Entered October 23, 2019
In the Court of Common Pleas of Montgomery County
Civil Division at No(s):  No. 2013-04105

BEFORE:   LAZARUS, J., KING, J., and STRASSBURGER, J.[*]

MEMORANDUM BY KING, J.:                    **FILED OCTOBER 16, 2020**

Appellant, David Hatchigian, appeals *pro se* from the order entered in the Montgomery County Court of Common Pleas, denying his motion for sanctions, in this breach of contract dispute.  We affirm.

The facts and procedural history of this case are as follows:

> …[Appellant] filed a complaint in Philadelphia County alleging [Appellee] undertook to represent him for an appeal but failed to provide legal services sufficient to warrant the $1,000.00 non-refundable minimum fee.  [Appellant] attached to this complaint the engagement letter signed by both parties which stated that [Appellant] "agreed to give [Appellee] a $1,000.00 non-refundable retainer/minimum fee" as a payment to "review the case and possibly assure [Appellant's] representation in this matter."  [Appellee] reviewed [Appellant's] files and ultimately declined to represent him in the appeal, due in part to low chance of success.  When [Appellee] subsequently requested the non-

_____

[*] Retired Senior Judge assigned to the Superior Court.

refundable minimum fee for review of [Appellant's] case, [Appellant] responded with a letter requesting that the non-refundable retainer be returned in full or in part, due to his feeling that [Appellee] "had not read the file in sufficient depth." During oral argument on the motions *in limine*, [Appellant] stated on the record that "[t]here is no misunderstanding that I understood the contract reads nonrefundable… What I'm saying is I didn't read it when I signed the contract."

[Appellant's] Philadelphia County action against [Appellee] was transferred to Montgomery County via Court Order following [Appellee's] filing of preliminary objections. The parties proceeded to arbitration in 2016, where the arbitration panel made an award in favor of [Appellee]. [Appellant] appealed the arbitration award and filed a complaint in Montgomery County on April 25, 2016, which asserted two counts entitled "Breach of Contract" and "Breach of Fiduciary Duty."

The parties appeared for a one-day jury trial on August 19, 2019, and after jury selection [but before trial began], the parties agreed to settle. In an on-the-record exchange, the terms of the settlement were memorialized, with [Appellant] agreeing to resolve the case in return for [Appellee] paying him the $1,000.00 fee and dropping his counterclaim. The parties also agreed that [Appellee] would draft a release and that [Appellee] would have no obligation to send a check until [Appellant] signed and returned to [Appellee] both the release and order to settle, discontinue, and end the case. Specifically, [Appellant] accepted the settlement on the record during the following exchange:

> The [c]ourt: We discussed this jury charge, and the [c]ourt has worked out a resolution on this case; is that right? I'm asking the parties. [Appellant], I'm asking you, **[Appellant], you agreed to resolving this case for a thousand-dollar fee that you paid counsel?**
>
> [Appellant]: **Yes.**
>
> The [c]ourt: And we'll reduce this to a release and eventually an order to discontinue and end this case.

Once the release is signed, [Appellee], you're going to send him a check for the thousand dollars. That ends this case.

[Appellant]: Yes.

The [c]ourt: And there will not be any further actions followed arising out of the cause of action that you originally filed.

[Appellant]: Correct. I agree.

The [c]ourt: As well, the counterclaim will be dropped.

[Appellee]: Yes, Your Honor. I just have one thing to say to the semantics. I'm going to send a release and an order to settle for [Appellant] to sign. Once I receive both documents, originals, back, that's when the check will be sent out.

The [c]ourt: All right. So you understand the check doesn't go out until you sign the release.

[Appellant]: Pardon me?

The [c]ourt: **The check will not go out until you sign the release and the order to settle and end the case.**

[Appellant]: **Right.**

The [c]ourt: Discontinuing the case, both of them.

[Appellant]: After I sign the release –

The [c]ourt: And the order to settle.

[Appellee]: Then I'll send you a check.

The [c]ourt: Then he'll send you the check.

[Appellant]: After I sign –

The [c]ourt: So you have to get both of those back to

- 3 -

him.

> On August 26, 2019, [Appellee] provided [Appellant] with a release and order to settle. [Appellant] replied to [Appellee] on September 3, 2019, stating that he found the release "not acceptable" and that he would not sign the release until after he received settlement funds. On September 26, 2019, [Appellant] filed a "Rule 229.1 Motion for Sanctions for Failure to Deliver Settlement Funds," alleging that [Appellee] had wrongfully withheld settlement funds and requesting that this [c]ourt impose sanctions in the form of invalidation of the settlement, interest running from the twenty-first day of the date of delivery of the settlement funds, and $500 in attorney's fees and costs associated with said motion. On October 3, 2019, [Appellee] filed a response in opposition, alleging that [Appellant] had failed to meet the terms and conditions of the settlement by failing to sign and return the release or order as agreed in open court on August 19, 2019. This [c]ourt denied [Appellant's] Motion for Sanctions in an Order dated October 23, 2019.

> [Appellant] filed a timely Notice of Appeal on October 24, 2019.

(Trial Court Opinion, filed November 26, 2019, at 1-4) (emphasis in original) (internal citations and footnote omitted). The court ordered Appellant on November 1, 2019, to file a concise statement of errors complained of on appeal, per Pa.R.A.P. 1925(b); Appellant complied on November 6, 2019.[1]

Appellant presents the following issues on appeal:

> Whether any authority exists requiring a settling party to execute a specific release or a release improperly naming a nonparty.

> Whether the motion to invalidate under subdivision (d)(1)

---

[1] The order denying Appellant's motion under Rule 229.1 was a final and appealable order. *See generally Wright v. Lexington & Concord Search and Abstract LLC*, 26 A.3d 1134, 1136 n.1 (Pa.Super. 2011).

> of Rule 229.1 should have been granted irrespective of the court's decision regarding sanctions under subdivision (d)(2) and this case reinstated.
>
> Whether the requested sanctions should now be granted given that all preconditions to payment have now been satisfied.

(Appellant's Brief at 4).[2]

Appellant argues the trial court erred in denying his motion for sanctions under Pa.R.C.P. 229.1, where Appellee failed to send Appellant the agreed-upon settlement funds. Appellant contends he refused to sign Appellee's original release because it included Appellant's wife, a non-party to this action. Appellant maintains Appellee failed to submit a corrected version of the release to Appellant in a timely fashion, thereby discharging Appellant from his obligation to execute the release. Appellant insists that the parties' failure to execute a finalized release did not form a valid basis for denying sanctions under Rule 229.1, because Appellee failed to submit a corrected release. Appellant notes that Appellee failed to execute the signed release Appellant sent to him on February 25, 2020.

Appellant further asserts that he offered Appellee the alternative option of waiving the release and "accepting release by discontinuance, *i.e.*, accepting a signed *Praecipe* to 'Settle, End and Discontinue' in exchange for

---

[2] Appellant failed to raise his third issue on appeal in his Rule 1925(b) statement. Therefore, it is waived. **See Commonwealth v. Castillo**, 585 Pa. 395, 888 A.2d 775 (2005) (explaining general rule that issues not raised in Pa.R.A.P. 1925(b) statement will be deemed waived for appellate review).

payment of the settlement funds." Appellant claims that a discussion concerning his offer to sign the *praecipe* in lieu of a modified release was somehow omitted from the notes of testimony. Alternatively, Appellant submits the court should have granted his request to invalidate the settlement agreement, regardless of its decision concerning sanctions, and should have rescheduled the instant matter for a trial on the merits. Appellant concludes this Court should grant him sanctions under Rule 229.1, or vacate the trial court's October 23, 2019 order and remand for trial. We disagree.

"Our standard of review of a trial court's grant or denial of a motion to enforce a settlement agreement is plenary, as the challenge is to the trial court's conclusion of law." **Casey v. GAF Corp.**, 828 A.2d 362, 367 (Pa.Super. 2003), *appeal denied*, 577 Pa. 684, 844 A.2d 550 (2004). While we are free to draw our own inferences and reach our own conclusions from the court's factual findings, we are bound by those findings of fact when competent evidence exists to support them. **Id.**

Rule 229.1 governs delivery of settlement funds and allows sanctions for failure to deliver funds. Pa.R.C.P. 229.1. The Rule reads in relevant part as follows:

**Rule 229.1. Settlement Funds. Failure to Deliver. Sanctions**

(a) As used in this rule,

"defendant" means a party released from a claim of liability pursuant to an agreement of settlement;

"plaintiff" means a party who, by execution of a release pursuant to an agreement of settlement, has agreed to forego a claim of liability against a defendant. The term includes a defendant who asserts a counterclaim;

"settlement funds" means any form of monetary exchange to a plaintiff pursuant to an agreement of settlement, but not including the annuity or future installment portion of a structured settlement.

(b) The parties may agree in writing to modify or waive any of the provisions of this rule.

(c) If a plaintiff and a defendant have entered into an agreement of settlement, the defendant shall deliver the settlement funds to the attorney for the plaintiff, or to the plaintiff if unrepresented, within twenty calendar days from receipt of an executed release.

\* \* \*

(d) If settlement funds are not delivered to the plaintiff within the time required by subdivision (c), the plaintiff may seek to

(1) invalidate the agreement of settlement as permitted by law, or

(2) impose sanctions on the defendant as provided in subdivision (e) of this rule.

(e) A plaintiff seeking to impose sanctions on the defendant shall file an affidavit with the court attesting to non-payment. The affidavit shall be executed by the plaintiff's attorney and be accompanied by

(1) a copy of any document evidencing the terms of the settlement agreement,

(2) a copy of the executed release,

(3) a copy of a receipt reflecting delivery of the executed release more than twenty days prior to the date of filing of the affidavit,

(4)   a certification by the attorney of the applicable interest rate,

(5)   the form of order prescribed by subdivision (h), and

(6)   a certification by the attorney that the affidavit and accompanying documents have been served on the attorneys for all interested parties.

(f)   Upon receipt of the affidavit and supporting documentation required by subdivision (e), the defendant shall have twenty days to file a response.

(g)   If the court finds that the defendant violated subdivision (c) of this rule and that there is no material dispute as to the terms of the settlement or the terms of the release, the court shall impose sanctions in the form of interest calculated at the rate equal to the prime rate as listed in the first edition of the Wall Street Journal published for each calendar year for which the interest is awarded, plus one percent, not compounded, running from the twenty-first day to the date of delivery of the settlement funds, together with reasonable attorneys' fees incurred in the preparation of the affidavit.

Pa.R.C.P. 229.1.

Additionally, settlement agreements are contracts, and courts employ contract principles when interpreting settlement agreements. ***Kramer v. Schaeffer***, 751 A.2d 241, 245 (Pa.Super. 2000). A fundamental rule in construing a contract is to ascertain and give effect to the intent of the contracting parties. ***Kmart of Pennsylvania, L.P. v. MD Mall Associates, LLC***, 959 A.2d 939, 943 (Pa.Super. 2008), *appeal denied*, 602 Pa. 667, 980 A.2d 609 (2009).

Instantly, in addressing Appellant's issues on appeal, the trial court

reasoned:

> All…of [Appellant's] issues complained of on appeal generally allege error in this [c]ourt's denial of his "Rule 229.1 Motion for Sanctions for Failure to Deliver Settlement Funds." As for his first allegation of error specifically, [Appellant] questions whether "any authority exists requiring a settling party to execute a [specific] release…" Of significance, nowhere in its Order of October 23, 2019 denying the motion for sanctions did this [c]ourt further order that [Appellant] must execute the specific version of the release sent by [Appellee]. The scope of the Order was narrower than [Appellant] appears to allege in his concise statement, merely denying [Appellant's] request to impose sanctions on [Appellee]. In any event, the record above clearly establishes that [Appellant] agreed to a settlement, and nowhere – either at trial or in subsequent orders – has this [c]ourt ordered that Appellant must execute any particular version of a release.
>
> [Appellant's] second…issue[] on appeal touch[es] more directly on the question of whether this [c]ourt was bound to invalidate the settlement or grant other sanctions. In his motion for sanctions, [Appellant] specifically cites Rule 229.1 as his authority for such a request. However, [Appellant's] allegations of error lack any merit, as this [c]ourt has no authority to either invalidate the settlement or impose sanctions under Pa.R.C.P. 229.1.(d) where [Appellant] has not proven [Appellee] failed to deliver funds "within the time required by subdivision (c)." In other words, for Pa.R.C.P. 229.1(d) to apply, [Appellee] must have failed to deliver settlement funds "within twenty calendar days **from receipt of an executed release**." Pa.R.C.P. … 229.1(c) (emphasis added). In this case, [Appellant] himself made it impossible for [Appellee] to have violated Pa.R.C.P. 229.1(c), as [Appellant] never returned an executed release to [Appellee]. Thus, this [c]ourt did not err in finding that [Appellant] was not entitled to relief under Pa.R.C.P. 229.1(d), as [Appellee] had no obligation to deliver settlement funds in the absence of an executed release.
>
> Even outside of the plain language of Pa.R.C.P. 229.1, [Appellant] had agreed on the record at trial to a procedure

in which [Appellee] would not be required to send settlement funds until receipt of a signed release:

> [Appellee]: Yes, Your Honor. I just have one thing to say to the semantics. I'm going to send a release and an order to settle for [Appellant] to sign. Once I receive both documents, originals, back, that's when the check will be sent out.
>
> The [c]ourt: All right. So you understand that the check doesn't go out until you sign the release.
>
> [Appellant]: Pardon me?
>
> The [c]ourt: **The check will not go out until you sign the release and the order to settle and end the case.**
>
> [Appellant]: **Right.**

In this case, [Appellant] agreed to settlement terms and agreed that [Appellee] would have no obligation to send him settlement funds until and unless he received a signed release from [Appellant].[3] [Appellant] cannot now argue that this [c]ourt improperly refused to invalidate the settlement or impose sanctions, when his own refusal to execute the release barred him from remedies reserved for those who have been wrongfully denied settlement funds only after executing a release. Thus, [Appellant's] own actions made Pa.R.C.P. 229.1(d) inapplicable to him, and this [c]ourt did not err in denying his motion for sanctions.

> [3] [Appellee] stands ready to release the $1,000.00 retainer fee upon the signing of the general release and had earlier agreed to strike the wife's name as a signor on said release in a conference on October 18, 2019.

(Trial Court Opinion at 6-7) (emphasis in original) (internal citations and footnote omitted). We agree with the trial court's analysis. Here, both the plain language of Pa.R.C.P. 229.1 and Appellant's on-the-record agreement

- 10 -

dictate that Appellant must sign and return a release to Appellee before Appellee delivers the settlement funds. *See* Pa.R.C.P. 229.1; *Kmart of Pennsylvania, L.P., supra*. At the time Appellant filed his motion for sanctions, however, Appellant had failed to sign and return the release. Thus, the court properly denied Appellant's motion for sanctions. *See Casey, supra*. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/20