2018 PA Super 129

| | |
|---|---|
| MENDY TRIGG, INDIVIDUALLY, AND SMITHFIELD TRUST, INC., AS THE GUARDIAN OF THE ESTATE OF JILLIAN TRIGG, A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| CHILDREN'S HOSPITAL OF PITTSBURGH OF UPMC, | |
| Appellee | No. 1041 WDA 2017 |

Appeal from the Judgment entered June 28, 2017,
in the Court of Common Pleas of Allegheny County,
Civil Division, at No(s): GD 13-002322.

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

OPINION BY KUNSELMAN, J.:                    FILED MAY 14, 2018

Mendy Trigg (Jillian Trigg's mother) and Smithfield Trust, Inc. filed this appeal following a jury verdict in favor of Children's Hospital of Pittsburgh of UPMC. [1]  The Triggs claim that Allegheny County Civil Division's jury selection process deprived them of their right to a fair trial.  The Hospital insists that the palpable-error deference standard announced in McHugh v. Proctor & Gamble, 776 A.2d 266 (Pa. Super. 2001), requires us to affirm.  However, for the reasons that follow, we cannot extend the McHugh deference standard

_____

[1] Smithfield Trust, Inc. is guardian of Jillian Trigg's estate.  For simplicity sake, we will refer to the Appellants as "the Triggs" and the Appellee as "the Hospital."  The Hospital allegedly injured Jillian Trigg during her recovery from surgery, but that is beyond the scope of this appeal.

to trial judges who fail to observe voir dire in person. After reviewing the Triggs' challenge to Prospective Juror 29 de novo, we reverse and remand for a new trial.

The Triggs submitted three questions on appeal, all of which challenge the jury selection process in this case:

1. Did the trial court err in denying the [Triggs'] Motions to Strike for Cause potential jurors who exhibited such bias and prejudice that they could not have been fair and should have been stricken from the panel, which required the [Triggs] to use 3 of [their] 4 [peremptory] strikes to remove these potential jurors causing obvious prejudice to the [Triggs].

2. Did the trial court err specifically when it denied the [Triggs'] request to ask voir dire questions of the venire about (1) the [Hospital] and its relationship in the community, especially in light of [the Hospital's] opening statement when these issues were placed before the jury without any voir dire examination, (2) unintentional harm, since many jurors do not understand the burden of proof and hold the plaintiff to a higher burden than is required in civil cases; and (3) generally in imposing a restriction on additional voir dire questions that they may not include any facts or law of the case.

3. Did the trial court err:

   (1)    in failing to observe the demeanor and tenor of prospective jurors or; if observation by the Court wasn't being offered, in failing to assume that the demeanor and tenor of the prospective jurors exhibited extreme bias;

   (2)    in instructing and having the county clerk engage in rehabilitation following an expression of bias, rather than explore the bias; and

   (3)    in limiting [the Triggs'] Counsel's follow-up after an expression of bias by a potential juror.

Triggs' Brief at 5-6.[2]

Specifically, with respect to the first question, the Triggs argue that prospective Jurors 28, 29 and 37 should have been stricken for cause, and the failure to strike these jurors for cause was prejudicial. Triggs' Brief at 15-23. Our analysis of questions 1 and 3 (1) with respect to Juror 29 disposes of this appeal.

The Civil Division of the Court of Common Pleas of Allegheny County does not assign a trial judge to preside over jury selection. Instead, the "Calendar Control Judge" delegates that duty to a court clerk in the Jury Assignment Room. See N.T., 3/17/17, at 3, 15. Potential jurors meet individually with the clerk and the parties' attorneys. Id. at 23. The clerk asks a series of standardized questions, and then the lawyers may pose five additional inquires. Id. The clerk permits brief follow-up questions to flesh-out the jurors' replies. Id. at 27.

If an attorney wishes to challenge a juror for cause, the clerk notes the challenge, and, after interviewing all potential jurors, the clerk and attorneys return to the Calendar Control Judge's courtroom. Id. at 201. There, the

_____

[2] We previously addressed a claim regarding Allegheny County Civil Division's voir dire process in Starr v. Allegheny General Hospital, 451 A.2d 499 (Pa. Super. 1982). In that case, however, we noted that the appellant did not argue the procedure used "caused a partial and prejudiced jury to be impaneled." Id. at 501. This is the Triggs' essential claim in this case. Instead, in Starr, the appellant contended that a deputy clerk reading questions approved by the court was, in itself, inherently prejudicial. We found no abuse of discretion in permitting the deputy clerk to read the voir dire questions to the prospective jurors. Id. at 502.

judge, reading the transcript of what occurred just moments ago, and only a few yards away, rules on the challenges for cause. Id. at 202, 203, 206.

The Triggs dispute the results of this system because the judge, lacking any firsthand perception of the jurors' demeanor during the voir dire, ruled that all three of the jurors that the Triggs challenged were unbiased and impartial. The Triggs were then forced to exhaust three of four peremptory strikes to remove the challenged jurors. This left them with only one peremptory strike for the rest of the jury panel, which they used. On appeal, the Triggs attack the trial court's voir dire process on various grounds. First and foremost, they argue that the judge erred by not striking for cause the three "potential jurors who exhibited such bias and prejudice that they could not have been fair[.]" Triggs' Brief at 5.

The Hospital counters that precedent requires us to defer — and defer greatly — to the trial judge. It reminds us "[w]hen a juror demonstrates a likelihood of prejudice by conduct or answers to questions, much depends on the answers and demeanor of the potential juror as observed by the trial judge and therefore reversal is appropriate only in the case of palpable error." Hospital's Brief at 19, quoting McHugh, 776 A.2d at 270 (Pa. Super. 2001) (emphasis added by Hospital). By emphasizing the case's conclusion, the Hospital misses McHugh's point entirely.

The Supreme Court of Pennsylvania, in adopting McHugh, recently explained:

We defer to the trial judge because it is he or she that observes the juror's conduct and hears the juror's answers. The juror appears before the trial judge, who sees him and hears what is said; and is able to form his opinion as much from the proposed juror's conduct as from the words which he utters, printed in the record. Hesitation, doubt, and nervousness indicating an unsettled frame of mind, with other matters, within the judge's view and hearing, but which it is impossible to place in the record, must be considered. As it is not possible to bring these matters to our attention, the trial judge's view should be given great weight in determining the matters before him.

Shinal v. Toms, 162 A.3d 429, 443-442 (Pa. 2017) (citations and some punctuation omitted) (emphasis added). Our High Court placed great significance on the trial judge's personal observation of the prospective jurors.

Here, however, the trial judge personally observed nothing; therefore, we see no reason to extend the McHugh deference standard in this situation, where only the attorneys and the clerk witnessed the physical and verbal cues that the challenged jurors exhibited. N.T., 3/17/17, at 15. The trial judge acquired none of the wisdom or insight that he could have from noting a jurors' furtive glance, a tremor of voice, a delayed reply, a change in posture, or myriads of other body language.

Allegheny County judges in the civil division do not view the demeanor of prospective jurors, unless an attorney asks for the juror to appear before the judge in chambers to recreate the initial voir dire.[3] The Hospital contends

_____

[3] We understand the vior dire process differs in the criminal division in Allegheny County. There, the trial judge, as opposed to a calendar control judge, is assigned to preside over voir dire. Although our decision would apply

that the Triggs' failure to request a recreation of the initial questioning in this case constitutes waiver of this issue. Hospital's Brief at 29. We disagree. Re-questioning prospective jurors could never reproduce the authentic reactions that they displayed when the questions were originally asked. As the Triggs correctly observed, "the time to assess the demeanor had passed...you only get one chance to make a first impression." Triggs' Reply Brief at 2. Additionally, if jurors are individually summoned from the panel to the Calendar Control Judge's chambers for re-questioning, those jurors will have had extra time to rethink their answers. They may even suspect there was a problem with their original responses and try to "fix" them. In any event, the responses will not be as genuine the second time around.

A judge personally witnessing the original voir dire is essential, because it justifies our — and a losing party's — faith in the trial court's rulings on challenges for cause. The Hospital argues that the judge's absence from "the room when the jurors were being questioned...is a red herring." Hospital's Brief at 28. Again, the Hospital is mistaken. The knowledge gleaned from in-person observations is "impossible to place in the record, [but] must be considered." Shinal, supra. An absentee judge misses the crucial instant

_____

in either a civil or a criminal case, (i.e. a deferential standard to a trial court's ruling on a motion to dismiss a juror for cause will only be used when the trial judge witnessed the prospective juror's responses), we make no decision regarding the standard of review if a party in criminal court chooses to waive the judge's presence for voir dire.

when would-be jurors reveal their inmost selves by both words and actions. Id.

Lastly, the Hospital attempts to excuse the judge's absence by relying on Rule of Civil Procedure 220.3(c).[4] That Rule's Official Note provides: "The parties or their attorneys may conduct the examination of the prospective jurors unless the court itself conducts the examination or otherwise directs that the examination be conducted by a court employee. Any dispute shall be resolved by the court." Note to Pa.R.C.P. 220.3. The Note allows a clerk to ask questions on the court's behalf; ruling on challenges for cause remains a judge's obligation.

By not contemporaneously observing the jurors' responses, when ruling on challenges for cause, the trial judge in this case deprived himself of any greater perception of the jurors' partiality than an appellate court can discern by reviewing the same, cold record. Thus, McHugh's rationale for reversing only in the face of palpable error does not apply here. We hold, therefore, that the McHugh deference standard shall be limited to instances where a trial judge has personally observed the original voir dire. That did not occur in this case.

Trial judges possess no greater skill at interpreting a transcript than an appellate court. This situation is analogous to an appellate court's review of

_____

[4] Pa.R.C.P. 220.3(c) provides: "The court may provide for voir dire to include the use of a written questionnaire. However, the use of a written questionnaire without the opportunity for oral examination by the court or counsel is not a sufficient voir dire."

a contract. When a trial court's interpretation of a contract is on appeal, "our standard of review is de novo and our scope of our review is plenary." In re Estate of Easterday, 171 A.3d 911, 919 (Pa. Super. 2017). This standard shall likewise apply when, as in this case, the trial judge based his rulings on challenges for cause solely upon reading the transcript.

We, therefore, review de novo the Triggs' challenge to Prospective Juror 29. The Triggs challenged this juror for cause on the grounds that she admitted she would favor medical practitioners. N.T., 3/17/17, at 203. Her sister and brother-in-law were both doctors. When asked if "in a close call" she "would tend to favor the medical profession," Juror 29 replied, "Probably, yes." Id. Her further explanation demonstrated empathy for medical professionals and indicated a bias in favor of the Hospital. She stated:

> I see what they go through and I know how much they care about their patients and I know they would never do anything wrong. Obviously I realize there are people out there who aren't my siblings. So obviously they might not be as fair and clear in judgment.

Id. at 149.

This answer shows her implicit trust for medical professionals. Juror 29 clearly viewed the patient/doctor relationship through the rose-colored glasses of familial love and admiration, and assumed the medical professionals sued in this case would do no harm. We, therefore, must disagree with the trial court's conclusion that having a sister and brother-in-law who were physicians was simply a life experience that this juror brought to the case. By

her own admission, her predisposition would have influenced her deliberations to some degree. This influence was a justifiable cause to exclude her from serving as juror in this case, where the Triggs have accused a healthcare provider of malpractice. Even "the slightest ground of prejudice is sufficient" to disqualify a potential juror. Shinal, 162 A.3d at 439, (quoting Commonwealth v. Lesher, 1827 WL 2776 at 2 (Pa. 1828)). Our judicial system abhors even the appearance of partiality. "One of the most essential elements of a successful jury trial is an impartial jury." Id. at 438 (citations omitted).

Having found error, we must next consider whether it was harmless. As noted above, the trial court's ruling as to Juror 29 forced the Triggs to exhaust all of their peremptory challenges. In this situation, reversible error has occurred. See Commonwealth v. Penn, 132 A.3d 498, 505 (Pa. Super. 2017) (citing Commonwealth v. Johnson, 445 A.2d 509, 514 (Pa. Super. 1982) (holding "[w]here, as here, a defendant is forced to use one of his peremptory challenges to excuse a prospective juror who should have been excused for cause, and then exhausts his [peremptory strikes] before the jury is seated, a new trial will be granted.")

Accordingly, we reverse the order denying a new trial and vacate the judgment entered upon the verdict. Based on our decision with respect to Juror 29, we need not address the remaining issues raised by the Triggs in this appeal. This matter is remanded for a new jury selection and trial.

Judgment vacated. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

Judge Bowes joins this Opinion and files a Concurring Statement.

Judge Olson joins the Opinion and joins the Concurring Statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/14/2018