J-A08032-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ANN SMITH, AS EXECUTRIX OF THE ESTATE OF DALE SMITH, DECEASED, ON BEHALF OF HERSELF INDIVIDUALLY, SURVIVING SPOUSE OF THE DECEDENT, AND THE NEXT OF KIN OF DALE SMITH, AND ON BEHALF OF THE ESTATE OF DALE SMITH, DECEASED | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : : | No. 1166 WDA 2018 |
| v. | : : : : | |
| MARC CORDERO, M.D. AND UPMC MCKEESPORT, A DIVISION AND HOSPITAL OF THE UNIVERSITY OF PITTSBURGH MEDICAL CENTER AND UPMC WOUND HEALING SERVICES AT UPMC MCKEESPORT, A DIVISION OF UPMC MCKEESPORT AND THE UNIVERSITY OF PITTSBURGH MEDICAL CENTER | : : : : : : : : : : : | |

Appeal from the Order Entered August 7, 2018
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD-14-014061


BEFORE:  PANELLA, P.J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED JULY 16, 2019**

In this medical malpractice case, Ann Smith, as Executrix of the Estate

of Dale Smith, deceased, on behalf of herself individually, the next-of-kin of

Dale Smith, and on behalf of the Estate ("Smith"), appeals the judgment

entered in favor of Marc Cordero, M.D., UPMC McKeesport, a division of the

University of Pittsburgh Medical Center and UPMC Wound Healing Services at

UPMC McKeesport, a division of UPMC McKeesport and the University of Pittsburgh Medical Center (collectively "UPMC"). We conclude the trial court erred in denying Smith's motions to strike two jurors for cause and that the error was not harmless. We vacate the judgment and remand.

Dale Smith ("Decedent"), who suffered from diabetes, kidney disease, and other ailments, visited Dr. Cordero due to leg wounds/ulcers. Smith claims that Dr. Cordero misdiagnosed the leg wounds as venous, not arterial, and this misdiagnosis caused Decedent to have his leg amputated. Smith alleges this amputation caused a series of events that ultimately resulted in Decedent's death.

Jury selection commenced in March 2018. A court clerk, not the trial judge, conducted the *voir dire*. The *voir dire* proceeding before the court clerk was not transcribed. Smith made motions to challenge for cause Jurors No. 25, 37, and 45. The parties appeared before the trial judge for a hearing on the motions. The hearing before the trial judge as to the challenges was transcribed.

The motions to challenge for cause related to the jurors' affirmative answers to two questions:

> [1.] Do you have any feelings or opinions about whether medical malpractice lawsuits affect the cost, availability and other medical services[?]
>
> . . .
>
> [2.] Do you have any feelings or opinions as to whether there should be a minimum or maximum amount of money that can be awarded to an injured party?

N.T., 3/26/18-4/3/18, at 4-5.

Smith's counsel explained to the court that Juror No. 37 "had some pretty strong opinions and she responded to questions saying that she believes that there should be a maximum on jury awards" and that "due to the exorbitant awards, she believes that malpractice cases are keeping doctors from practicing medicine." *Id.* at 3-4. Counsel explained that "if somebody . . . say[s] that malpractice cases in general are keeping doctors from practicing, that's an inherent belief that we're not starting on the same ground level. . . . She's going in with a preconceived notion." *Id.* at 4.

UPMC's counsel stated that "it was clear that [Juror No. 37] was . . . a[n] intelligent woman and an articulate woman who expressed that she had opinions regarding circumstances." *Id.* at 6. Counsel stated that Juror No. 37 related a personal experience—"[she] was raised in a small town where the circumstances were such because of the high cost of malpractice coverage, certain OB/GYN doctors failed [to] deliver babies. You couldn't get doctors to deliver babies in [her] town." *Id.* When asked whether she could be fair and impartial, Juror No. 37 responded "yes" and stated that although she thought the verdicts were high and excessive she could "listen to the instructions and be fair and impartial." *Id.* at 6-7.

Smith's counsel stated that Juror No. 25 "believe[d] that jur[ies] award too much money in malpractice cases and malpractice cases drive up the cost of services." *Id.* at 8. She also stated she would follow the court's instructions. *Id.* UPMC's counsel stated that Juror No. 25 was "less expressive" than Juror

No. 37 and that Juror No. 25 "expressed no real detailed opinion" and "just answered [in] the affirmative and then moved on." ***Id.*** at 9.

Smith's counsel stated that Juror No. 45 had the same responses, and said that "she was a little stronger on the maximum awards [and] . . . I believe she said she believes in caps." ***Id.*** at 10. He stated "[s]he has the fundamental beliefs" regarding "malpractice cases and the amount of award[s that] have no business on the panel." ***Id.*** UPMC's counsel stated that "[t]he fact that the[ jurors] have opinions doesn't necessarily make them biased and the expression of that opinion . . . by no means is . . . an indication of bias." ***Id.***

The trial court granted the motion as to Juror No. 37, but denied it as to Jurors No. 25 and 45.:

> If I heard you guys correctly, for me I don't seem to have a problem with denying -- and again, this is the story that you guys told me -- your motion Counsel, for number 25 and 45, I will deny those.
>
> I have more of a problem with 37 so I'm inclined to strike that. So I will allow the other two and sounds like I've heard enough of number 37, so I would strike her. Grant your motion on 37 and I will deny your motions on 25 and 45.

N.T., 3/26/18-4/3/18, at 13. Smith used a peremptory strike for one of the jurors and the other juror was an alternate. Smith used all peremptory strikes.

Following a jury trial, the jury found in favor of UPMC. Smith filed post-trial motions, which were denied. Smith filed a timely Notice of Appeal.

Smith raises the following issues:

1. Whether the trial court erred in violation of ***Shinal v. Toms***, 162 A.3d 429 (Pa. 2017) by denying two of Appellant's jury challenges for cause without personally

> witnessing the *voir dire* process and failing to evaluate the demeanor of the challenged jurors?
>
> 2. Whether the trial court erred in permitting testimony from Appellee's expert, Dr. Harold Brem, where Dr. Brem's expert report failed to set forth the grounds upon which his opinions were based in direct violation of Pa.R.C.P. 4003.5, and where his testimony went well beyond the four corners of the report?

Smith's Br. at 6-7.

Smith maintains the trial judge erred in denying the motions to strike, noting the judge did not witness *voir dire* and therefore did not see the jurors' conduct and demeanor. The court therefore "arbitrarily denied" the challenges. Relying on ***Trigg v. Children's Hospital of Pittsburgh of UPMC***, 187 A.3d 1013 (Pa.Super. 2018), *petition for allowance of appeal granted*, 201 A.3d 145 (Pa. 2019), Smith contends that this Court should conduct a *de novo* review of the denial of the motions to strike for cause, and should not give the trial court's decision any deference. Further, she argues that the jurors' answers showed "far more than the requisite slightest ground of prejudice" toward malpractice cases. Smith's Br. at 40. Smith notes that the denial of the motions for cause forced her to use a peremptory challenge.

UPMC responds that Smith waived the issue because she did not challenge the absence of the trial judge during *voir dire*. UPMC further claims that ***Trigg*** is not applicable. Here, because this Court decided ***Trigg*** after jury selection occurred in this case, UPMC maintains that the Allegheny County Court of Common Pleas was adhering to long-standing practice and that applying ***Trigg*** would hinder the administration of justice. UPMC also notes

that Smith did not argue that the jurors' demeanor contradicted their statements and points out that the parties agreed on the recitation of facts provided to the court. UPMC therefore argues that this Court should apply the abuse of discretion standard, and affirm the trial court.

In *Trigg*, the plaintiffs alleged that the "Allegheny County Civil Division's jury selection process deprived them of their right to a fair trial." 187 A.2d at 1015. They alleged the failure to strike three prospective jurors for cause was error and that the error was prejudicial. *Id.* at 1016. This Court described the *voir dire* practice for Allegheny County civil cases, as used in that case. According to the *Trigg* court, the court clerk and parties' attorneys met with the potential jurors. *Id.* If an attorney sought to challenge a potential juror for cause, the clerk noted the challenge and, after interviewing all jurors, the clerk and attorney returned to the courtroom of the calendar judge. *Id.* The judge would then read the transcript and rule on the challenges for cause. *Id.* In *Trigg*, after the above process, the trial judge ruled that three jurors should not be struck for cause. *Id.* The plaintiffs used three of their four peremptory strikes to remove the jurors. *Id.*

This Court in *Trigg* first addressed the deference we owe to the trial court where the trial judge was not present for the juror questioning during *voir dire*. We quoted a recent Pennsylvania Supreme Court case, which found that where a "juror demonstrates a likelihood of prejudice by conduct or answers to questions," appellate courts defer to trial judges during *voir dire* because the trial judge:

- 6 -

> [O]bserves the juror's conduct and hears the juror's answers. The juror appears before the trial judge, who sees him and hears what is said; and is able to form his opinion as much from the proposed juror's conduct as from the words which he utters, printed in the record. Hesitation, doubt, and nervousness indicating an unsettled frame of mind, with other matters, within the judge's view and hearing, but which it is impossible to place in the record, must be considered.

*Id.* at 1017 (quoting **Shinal v. Toms**, 162 A.3d 429, 442 (Pa. 2017)). We noted that the Supreme Court "placed great significance on the trial judge's personal observation of the prospective jurors," and found there was no reason to extend this deference where the trial judge was not present during questioning. *Id.* We further noted that the trial judge in **Trigg** "acquired none of the wisdom or insight that he could have from noting a juror's furtive glance, a tremor of voice, a delayed reply, a change in posture, or myriads of other body language." *Id.*

In **Trigg**, we also found that re-creating the initial questioning would not result in deference, noting that re-questioning "could never reproduce the authentic reactions [the jurors] displayed when the questions were originally asked." *Id.* We noted that, when absent from the room, the trial judge "misses the crucial instant when would-be jurors reveal their inmost selves by both words and actions." *Id.* at 1018. We therefore concluded that the trial judge "possess[ed] no greater skill at interpreting a transcript than an appellate court," and applied a *de novo* standard of review to motions to strike jurors for cause where the trial judge was not present during juror questioning. *Id.*

This Court in **Trigg** then applied a *de novo* review to determine whether the court erred in denying one of the motions to strike for cause. There, a juror admitted she would favor medical practitioners and stated her sister and brother-in-law were doctors. **Id.** The juror replied "probably, yes" when asked whether "in a close case," she "would tend to favor the medical profession." **Id.** She further explained that she "see[s] what they go through and [] know[s] how much they care about their patients and I know they would never do anything wrong. Obviously I realize there are people out there who aren't my siblings. So obviously they might not be as fair and clear in judgment." **Id.**

This Court found the answer "shows her implicit trust for medical professionals" and that she "clearly viewed the patient/doctor relationship through the rose-colored glasses of familial love and admiration, and assumed the medical professional sued in this case would do no harm." **Id.** We therefore concluded her predisposition would have influenced her deliberations to some degree and the influence was a justifiable cause to exclude her from serving as a juror. **Id.** at 1019. We reasoned that "[o]ur judicial system abhors even the appearance of partiality" and "the slightest ground of prejudice is sufficient to disqualify a potential juror." **Id.** (internal quotation marks omitted). We further found this error was not harmless, as the plaintiffs were forced to exhaust all of their peremptory challenges. **Id.**

We now apply the above to the case before us. We must first address UPMC's claim that Smith waived the issue. We conclude she did not. Smith's

post-trial motion argued that the trial court erred in failing to strike the two panel members. Further, *Trigg* did not impose a requirement that a judge be present. It merely addressed the applicable appellate standard of review where a judge does not witness the *voir dire*. *Trigg* therefore applies to this case and we will review the decisions to deny the motions to strike for cause *de novo*.[1]

We must next determine whether, after applying a *de novo* review, the trial court erred in denying the motions to strike Jurors No. 25 and 45 for cause.

The Pennsylvania Supreme Court has explained the prejudice required for disqualifying a juror as follows:

> The law, in every case, is scrupulous to prevent even the possibility of undue bias; it does not deal with a juror as with a witness; admit him, though it doubts him; the slightest ground of prejudice is sufficient. The prejudice itself need not be made out; the probability of it is enough. One related, though by marriage only, as remotely as the ninth degree, to the defendant or the prosecutor, may be

---

[1] UPMC attempts to distinguish *Trigg*, claiming the juror in that case had a close familial, financial, or situational relationship to the parties, such that *de novo* review would apply, regardless whether the trial judge was present. **See Shinal**, 162 A.3d at 441 (where the motion for cause is based on a "juror's relationship with the parties, counsel, victims, or witnesses" that is sufficiently close, the appellate court "presume[s] the likelihood of prejudice" and reviews the trial court's decision *de novo*). This is inaccurate. The bias displayed by the juror in *Trigg* was from the juror's answers that she had family who were medical professionals. *Trigg*, 187 A.3d at 1018; **see also Shinal**, 162 A.3d at 441 (where motion for cause is based on alleged biased opinion, this Court applies abuse of discretion standard). The juror did not have a relationship with a party.

challenged off the jury for that cause. Any one, who, in any possible way, no matter how honestly, has been warped by any preconceived opinion which may affect his verdict, or has made up his mind what verdict he is to give, and declared it, is excluded. Nothing in the law can well be more extensive than this right of challenge propter affectum.

*Shinal*, 162 A.3d at 439 (quoting *Commonwealth v. Lesher*, 1827 WL 2776, at *2 (Pa. 1828)).

Here, the jurors expressed their views that medical malpractice suits have affected the cost and availability of medical services and that there should be a minimum or maximum amount of money that may be awarded to an injured party. The jurors stated that they could follow the court's instructions and be fair and impartial. However, as the trial judge was not present to hear the juror's tone of voice and see the juror's demeanor, we cannot know whether the jurors truly could be fair and impartial. We therefore conclude that the answers expressed the "slightest ground of prejudice" required for dismissal and the court should have granted the motions for cause. *See Shinal*, 162 A.3d at 439.

UPMC further claims that, even if the court erred in denying the motions for cause, the error was harmless, noting the verdict was 11-1. Courts, however, have found reversible error where a party was forced to use a peremptory strike to strike a juror that should have been struck for cause. *See Trigg*, 187 A.3d at 1019 (finding error in denying motion for cause not harmless where plaintiff had to exhaust all peremptory challenges); *see also Commonwealth v. Penn*, 132 A.3d 498, 505 (Pa.Super. 2016) (finding court abused its discretion in denying motion to strike juror for cause and the error

was not harmless because defendant forced to use peremptory challenge). Here, Smith used all of her peremptory challenges. Therefore the error in denying the motions was not harmless.

Because we conclude Smith is entitled to relief on her first claim, and evidence may be different in the second trial, we decline to reach the second claim.

Judgment vacated. Case remanded. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  7/16/2019