**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| MENDY TRIGG, INDIVIDUALLY AND SMITHFIELD TRUST, INC., AS THE GUARDIAN OF THE ESTATE OF J. T., A MINOR, | : : : : : | No. 3 WAP 2019 Appeal from the Order of the Superior Court dated May 14, 2018 at No. 1041 WDA 2017, vacating the Judgment of |
| Appellees | : : : | the Court of Common Pleas of Allegheny County, dated June 28, 2017 at No. GD 13-002322 and |
| v. | : : | remanding. |
| | : | ARGUED:  October 15, 2019 |
| CHILDREN'S HOSPITAL OF PITTSBURGH OF UPMC, | : : : | |
| Appellant | : | |

## OPINION

**JUSTICE TODD**                    **DECIDED:  APRIL 22, 2020**

In this case, a medical negligence suit brought by Appellees against Appellant Children's Hospital of Pittsburgh ("Hospital"), we accepted review to consider, *inter alia*, Appellees' argument that the trial court erred by not personally observing the demeanor of prospective jurors they challenged for-cause during *voir dire*.[1]  The Superior Court granted Appellees a new trial on this basis.  After careful consideration, we conclude Appellees waived their argument for appellate review, and, thus, that the Superior Court erred in considering it.  Accordingly, we vacate the judgment of the Superior Court and remand to that tribunal for further proceedings.

---

[1]  *Voir dire* is a term of French legal origin which means "to speak the truth," and it generally describes the pretrial process of examining prospective jurors in order to obtain "a competent, fair, impartial and unprejudiced jury."  2 West's Pa. Forms, Civil Procedure § 54:0 at 1.

# I. Facts and Procedural History

Appellee Mendy Trigg is the parent of J.T., who, in 2011, was age 4 and afflicted with craniosynostosis, a medical condition which results when, during an infant's growth and development process, his or her skull closes prematurely and exerts increased pressure on the brain. Trial Court Opinion, 9/7/17, at 2. On May 19, 2011, J.T. underwent surgery at the Hospital to correct this condition. Afterward, J.T. was transferred for post-operative care to one of the Hospital's intensive care units. While recovering there, J.T. fell out of the hospital bed, and, as a result, suffered damage to the surgically repaired cranial area, necessitating immediate ameliorative surgery. *Id.*

Subsequently, Appellees filed suit against the Hospital in the Allegheny County Court of Common Pleas alleging, *inter alia*, that the Hospital was negligent in placing J.T. in a regular adult size hospital bed, due to the large spaces between the vertical side rails, which they alleged enabled J.T.'s fall.[2] The Hospital denied negligence, and, after discovery was completed, the case was listed for trial during the March 2017 civil trial term.

By way of background, in accordance with the Allegheny County Local Rules of Civil Procedure ("A.C.L.R.C.P."), all members of the pool of prospective jurors summoned to serve during a civil trial term are required to fill out a written questionnaire in which they provide, *inter alia*, general personal information about their age, occupation, family members, prior involvement with any civil or criminal court cases, and relationships they have with individuals employed by the court system, or by insurance or health care professions. *See* Juror Questionnaire, A.C.L.R.C.P. 220.1. Pursuant to A.C.L.R.C.P. 212.2(b), prior to the commencement of *voir dire*, counsel for the plaintiff and defendant

---

[2] Appellee, Smithfield Trust, was appointed guardian of J.T.'s estate for purposes of this litigation.

are both required to prepare pretrial statements in which counsel must include any statements which they wish to give to the entire group of prospective jurors at the outset of *voir dire*, as well as any proposed additional questions to be asked of individual prospective jurors. As required by A.C.L.R.C.P. 212.2(c), disputes between parties regarding the content of such statements or questions are submitted to the calendar control judge for resolution. Notably, however, although available to rule on objections, neither the calendar control judge, nor the trial judge is ordinarily present during the *voir dire* process. Rather, the process is normally managed by a court clerk.[3]

Under Rule 212.2(c), a group of prospective jurors is summoned to the "Jury Assignment Room" on the seventh floor of the City County Building in downtown Pittsburgh.[4] For medical malpractice cases, the *voir dire* process proceeds in the manner specified in A.C.L.R.C.P. 220.1(c) and (d).[5] Under Rule 220.1(c), a court clerk first asks the group of prospective jurors general questions enumerated in this rule regarding whether their service constitutes a hardship; whether they have any social, business, or professional contact with the attorneys in the case; and whether they have a social, business, professional, or employment relationship with any of the parties in the case.

---

[3] Allegheny County recently amended Rule 212.2, adding subsection (d), to allow any party or the calendar control judge to request that a judge of the Allegheny County Court of Common Pleas preside over Civil Division *voir dire* and the jury selection process, and affording the presiding judge discretion over the *voir dire* and jury selection process. See A.C.L.R.C.P. 212.2(d) (effective Feb. 18, 2020) ("Should a party, parties, or the Calendar Control Judge request that a Judge preside over the voir dire and jury selection, the Judge presiding over the voir dire and jury selection shall have complete discretion over the voir dire and jury selection process, notwithstanding the preceding subsections of this local rule.").

[4] As described by one veteran Pennsylvania civil practitioner, Thomas Cooper, "[t]he Assignment Room is a large cavernous room designed to accommodate the selection of four jury panels simultaneously. Clerks and counsel sit at a table facing the jury panel, and the individual jurors move in sequence to the table where they are interrogated individually." *Jury Selection in Pennsylvania*, 70 Pa. Bar Association Quarterly 47.

[5] By contrast, Rule 220.1(a) and (b) enumerate questions to be asked of jurors in general civil cases, and Rule 220.1(e) and (f) mandate questions to be asked in asbestos cases.

After the clerk describes the broad nature of the case, *i.e.* medical malpractice, and furnishes brief background details about the case, the attorney for the plaintiff and the attorney for the defendant give their respective *voir dire* statements, indicating what each believes the evidence will show at trial. At the conclusion of those statements, the clerk asks the jurors, as a group, whether they have any knowledge about the case. The witnesses in the case are then introduced by the attorneys, and the clerk again inquires of the prospective jurors, as a group, whether they have any personal or familial association with those witnesses.

Once this group questioning is complete, pursuant to Rule 220.1(d) the court clerk questions each of the prospective jurors individually regarding: feelings or opinions they have about personal injury and medical malpractice cases generally; whether they have any feelings about medical malpractice cases or the parties in the case they are about to hear which would cause them to favor either the patient or the medical care provider; whether they believe it is improper to sue a medical care provider, even if the provider was careless; whether they believe there is a maximum or minimum amount of money which should be awarded to an injured party; whether they have any feelings or opinions about the effect of medical malpractice suits on the cost and availability of medical services; and whether they believe that the mere fact that a party suffers a complication after receiving medical care indicates that the medical provider must have done something wrong, which entitles the patient or the patient's family to compensation. If one or more of the jurors indicate that they possess such feelings or opinions, then the clerk inquires further of those jurors as to whether those feelings or opinions would affect their judgment, such that they could not render a fair and impartial verdict.

After these standard questions have been asked of each individual juror, Rule 220.1(g) requires that the court clerk ask each individual juror the additional *voir dire*

questions propounded by the parties. Once this process of asking the prospective jurors all of these questions is complete, counsel for either party may ask reasonable follow-up questions to individual jurors to further explore their answers.

In the instant case, 40 prospective jurors were summoned to the Jury Assignment Room on March 17, 2017 for the trial of this case, and *voir dire* was conducted in accordance with the aforementioned procedures. Of relevance to the case at bar, when prospective juror number 29 was asked whether she had any feelings about medical malpractice cases which would cause her to favor one party over the other, she answered that her sister and brother-in-law were doctors, and her mother-in-law was a nurse. N.T., 3/17/17, at 143. Under follow-up questioning by the court clerk as to whether she could be fair and impartial, she replied "I would like to think I would be fair and impartial, but I mean, it just depends on the facts and everything presented." *Id.* at 144. The juror elaborated that she could follow the judge's instructions in arriving at a verdict and determining damages and that she could decide the case based on the facts and the law. *Id.* at 146-47.

Appellees' counsel questioned this juror further:

> **[Appellees' counsel]**: Because of your family members, do you think in a close call you would tend to favor the medical profession?
>
> **Prospective Juror No. 29**: Probably, yes.
>
> **[Appellees' counsel]**: And why is that?
>
> **Prospective Juror No. 29**: Just I see what they go through and I know how much they care about their patients and I know they would never do anything wrong.
>
> Obviously I realize there are people out there who aren't my siblings. So obviously they might not be as fair and clear in judgment.

*Id.* at 148-49.

Prospective juror 29 was subjected to follow-up questioning by the court clerk in which she affirmed that she would be able to listen to the law as presented by the judge, and that her family members' professions would not influence her judgment such that she could not render a fair and impartial verdict. *Id.* at 149. At the conclusion of *voir dire*, Appellees' counsel challenged prospective jurors 28, 29, and 37 for cause.[6] These challenges were noted by the court clerk. *Id.* at 201.

Under the standard practice in Allegheny County, as noted, a judge is available during *voir dire* to rule on objections raised by the parties. *Starr v. Allegheny General Hospital*, 451 A.2d 499, 501 (Pa. Super. 1982). In this case, the judge tasked with this responsibility was the calendar control judge — the Honorable Ronald W. Folino. At the conclusion of *voir dire*, the parties moved to Judge Folino's courtroom, where he asked the objecting party — Appellees — to proceed. N.T., 3/17/17, at 201. Appellees' counsel asked if Judge Folino would like to read the transcripts of the prospective jurors' questioning. Judge Folino replied: "Whatever you would want to do to make your record on your objection, go right ahead." *Id.* Counsel for Appellees then stated: "I think it would be easier because some of them they talked about their biases and whether or not they could be fair. Some of them — like 28 doesn't believe in lawsuits, and just to read it would probably be quicker." *Id.* at 201-02. Thus, Judge Folino evaluated the for-cause objections by reading the transcript of the questioning of the prospective jurors by the court clerk and counsel for Appellees and the Hospital. At the conclusion of his evaluation of the transcript, and after hearing arguments from the parties, Judge Folino denied Appellees' motion to strike for-cause prospective jurors 28, 29, and 37. Appellees then

___

[6] As discussed at greater length herein, the Superior Court reversed and remanded for a new trial based on what it viewed as the trial court's improper denial of Appellees' for-cause challenge to prospective juror 29, which, in turn, caused them to exhaust their preemptory challenges. Accordingly, further discussion of Appellees' for-cause challenges to jurors 28 and 37 is not necessary for purposes of this appeal.

used three of their four allotted preemptory challenges to exclude these jurors from service. Appellees subsequently used their final preemptory challenge to exclude another juror, thereby exhausting those challenges.

After a jury was seated, the case proceeded to trial. At the conclusion of the five-day case, during which plaintiff and defendant presented competing evidence on the issue of negligence, the jury returned a verdict in the Hospital's favor.

Appellees filed a post-trial motion alleging, *inter alia*, that Judge Folino erred in denying their for-cause challenge to the prospective jurors. Specifically, Appellees alleged:

> There was no opportunity for the trial court to observe the demeanor or tenor of the challenged venireman's answers. At a minimum, the court must assume the challenged venireman exhibited extreme bias in demeanor and error (sic) in favor of granting a challenge. Any other form of review would deprive litigants in Allegheny County of the same Constitutional rights of litigants in all other counties where a judge can assess demeanor and tenor so as to identify and eliminate biased or prejudiced jurors.

Motion for Post-Trial Relief, 4/3/17, ¶ 36.

Judge Folino denied the motion. In his opinion prepared pursuant to Pa.R.A.P. 1925(a), he addressed the issue of his alleged error in not observing the demeanor of the prospective jurors before ruling on Appellees' for-cause challenges:

> I do not see anywhere in the record provided, however, where Plaintiff requested that I view the prospective jurors' demeanor before ruling on the Motions to Strike for Cause. In fact, counsel simply requested that I review the transcript of the questions and answers before ruling. . . . I would have been happy to meet with the subject prospective jurors had such a request been made. In fact, I frequently do so when requested by counsel or where I believe the transcript is insufficient.

Trial Court Opinion, 9/7/17, at 9.

Appellees filed a timely appeal to the Superior Court raising a panoply of issues, including that the trial court erred by not excluding prospective jurors 28, 29, and 37 for bias and prejudice, and by not observing the demeanor and tenor of these prospective jurors before denying their motion to strike them. Appellees asserted that, because the trial court erred in refusing to exclude these jurors, Appellees were required to use three of their four allotted preemptory challenges, causing them prejudice.[7]

The Superior Court reversed in a published opinion. *Trigg v. Children's Hospital of Pittsburgh of UPMC*, 187 A.3d 1013 (Pa. Super. 2018).[8] In its opinion, the court focused its analysis on the trial court's denial of Appellees' for-cause challenge to prospective juror 29, and to the trial court's lack of personal observation of this juror's demeanor during *voir dire*. The court found that its resolution of this question was dispositive of the appeal. *Id.* at 1016.

The court noted that, in *Shinal v. Toms*, 162 A.3d 429 (Pa. 2017), this Court endorsed a highly deferential standard of review of a trial court's ruling on a for-cause challenge to a particular juror, because we attached great significance to the fact that the trial court has the opportunity to personally observe the juror during the *voir dire* process. Therefore, because the trial judge may assess the prospective juror's credibility firsthand, and due to the fact that such assessment cannot be replicated from a printed transcript,

---

[7] Appellees also raised claims that the trial court erred by: denying their request to ask *voir dire* questions about the Hospital and its relationship in the community; denying their request to ask jurors questions on their understanding of the concept of unintentional harm, as it related to the plaintiff's burden of proof in civil cases; erred by restricting their right to ask additional *voir dire* questions that did not include facts and law of the case; erred by instructing the court clerk and having the clerk engage in rehabilitative questioning following a juror's alleged expression of bias, rather than the court exploring the bias itself; and erred by limiting Appellees' ability to ask follow-up questions after a potential juror purportedly exhibited bias during the initial questioning by the court clerk.

[8] The opinion was authored by Judge Deborah Kunselman and joined by Judges Mary Jane Bowes and Judith Olson.

appellate courts cannot easily reevaluate the trial court's credibility assessment. The Superior Court found that, in the instant case, such deference would be inappropriate, however, as the trial court did not witness the original questioning of the jurors by the court clerk.

The court observed that, because of the juror selection process used in Allegheny County, judges never view the demeanor of prospective jurors unless counsel requests the juror appear before the judge to "recreate the initial *voir dire*." *Trigg*, 187 A.3d at 1017. The court rejected the Hospital's contention that, because, during arguments before Judge Folino, Appellees did not object to the trial court's lack of personal observation of prospective juror 29's demeanor during *voir dire*, nor did they request that Judge Folino individually question this juror, they waived this issue for appellate review. The court reasoned that such a re-questioning "could never reproduce the authentic reactions that [the juror] displayed when the questions were originally asked." *Id.* The court additionally concluded that the extra time which elapsed between the jurors' original questioning and the follow-up questioning by the judge would give the jurors time to "rethink" their original answers and correct what they may have perceived to be errors in giving them. *Id.* Consequently, the court held that "[a] judge personally witnessing the original *voir dire* is essential, because it justifies our — and a losing party's — faith in the trial court's rulings on challenges for cause." *Id.* at 1018.

Because the trial court did not observe the *voir dire* process in this matter, the court refused to apply the deferential standard of review utilized in *Shinal*, and it reviewed, *de novo*, the trial court's decision to reject Appellees' for-cause challenge to prospective juror 29. The court determined that the trial court erred in denying this challenge, as, in its view, this juror exhibited bias in favor of medical professionals due to her familial relationships, which would have influenced her deliberations. Further, the court

determined that the error was not harmless given that it caused Appellees to utilize a peremptory challenge to exclude prospective juror 29, and thereby "forced [Appellees] to exhaust all of their peremptory challenges." *Id.* at 1019. As a result, the court vacated the judgment and remanded the case to the trial court for further proceedings.[9] The court did not address Appellees' remaining issues.

Thereafter, the Hospital filed a petition for allowance of appeal, which we granted, raising four issues, of which we find the following to be dispositive: "[w]hether the Superior Court improperly considered arguments regarding juror demeanor when those arguments were waived." *Trigg v. Children's Hospital of Pittsburgh of UPMC,* 201 A.3d 145 (Pa. 2019) (order).

## II. Arguments of the Parties

Because we conclude the Hospital's waiver issue is dispositive, we begin by addressing the parties' arguments with respect thereto. In the Hospital's view, the issue for the Superior Court's consideration was whether the answers provided by the prospective jurors during *voir dire* provided a specific basis for disqualifying them based on actual prejudice or bias, and it should have confined its analysis accordingly. The Hospital contends that the Superior Court erred, however, by instead considering arguments related to the conduct and demeanor of the prospective jurors, and the lack of

---

[9] Judge Bowes, while joining the majority opinion, authored a separate concurrence, joined by Judge Olson, expressing her concern as to whether the process utilized by Allegheny County for selection of jurors in civil matters "results in sound disqualification determinations." *Trigg,* 187 A.3d at 1020 (Bowes, J., concurring). In her view, the opportunity for a trial judge to view a prospective juror's demeanor firsthand while he or she is being questioned is critical in close cases where the juror's potential bias is not apparent from the record. She considers the trial judge's lack of opportunity to observe the jurors as they were being questioned as undercutting the judge's ability to make a well-founded decision, and hampers further appellate review of the judge's ruling.

the presence of a judge at *voir dire*, because those arguments were waived for purposes of appellate review, having never been properly raised in the trial court.

The Hospital considers the Superior Court to have committed clear error in basing its decision on these waived arguments and, in so doing, contravened years of precedent governing the *voir dire* process by deeming it "essential" for a trial judge to have personally witnessed the original *voir dire* in order to rule on a for-cause challenge to a juror. Hospital Brief at 22.[10] The Hospital rejects the proposition that only an original interrogation of a prospective juror in the presence of the trial court is sufficient to assess the prospective juror's candor. In its view, such a contention discounts the fact that many witnesses at trial, who have their credibility assessed by the fact-finder, have been previously questioned prior to trial via deposition or other means; hence, the Hospital propounds that original interrogation is manifestly not the only acceptable way to gauge credibility.

The Hospital emphasizes that Appellees, at no time before or during trial, "raised any arguments or made any record as to how the demeanor of the challenged jurors was relevant to Judge Folino's analysis or revealed purported bias." *Id.* The Hospital adds that, when Appellees made their for-cause challenge, they did not present Judge Folino with these arguments. Rather, Appellees merely asked Judge Folino to read the transcript to assess whether the jurors were biased as they contended, and Appellees declined to question the challenged jurors before Judge Folino, even though they had the opportunity to do so. Consequently, the Hospital concludes that, because of this waiver, issues relating to the propriety of the Allegheny County Civil Division juror selection process are not properly before this Court, and, in any event, nothing in those jury

---

[10] The parties filed redacted briefs in this matter to protect the identity of J.T., and our references herein are to these redacted briefs.

selection procedures precludes an in-person examination of a prospective juror by a trial judge.

Appellees respond by asserting that they could not have objected to the demeanor of the challenged jurors during *voir dire* for the simple fact that the trial judge was not present to rule on such an objection, and there was no way to record the objection for appellate review. Appellees highlight that, in *Shinal*, our Court stressed the importance of the trial judge's ability to view a prospective juror's demeanor when answering questions in *voir dire*, and, thus, only if the judge has the opportunity to observe the juror's demeanor will appellate courts apply a highly deferential standard of review.

Appellees aver that, when prospective juror 29 made her initial statements during *voir dire* reflecting her potential bias, these statements were made in such a fashion that her demeanor reflected her bias, yet the trial judge did not observe that demeanor, as he was not present at that time. Appellees claim that, when they made an argument regarding the alleged bias of prospective juror 29, implicit in that argument was a commentary on her demeanor, and, thus, they preserved the present issue for appellate review. See Appellees' Brief at 22 (discussing their argument to trial court that prospective juror's answer – that she would tend to favor the medical profession in a close call – indicated that she was "on the fence," and that her subsequent answers indicated a willingness to engage in "open defiance" of the trial court's directives (quoting N.T., 3/17/17, at 204)).

Appellees deny that they should have challenged the jury selection process at the outset of the trial, inasmuch as they assert that they were not challenging that process, but only the prejudice which ensued. Appellees claim that they were merely following the established procedures in Allegheny County and that they utilized the "only legitimate recourse" available to them which was to have the trial judge read the transcript and rule

on their objection. *Id.* at 24. Lastly, Appellees argue that they properly preserved the issue of the trial court's lack of firsthand assessment of the jurors' demeanor during *voir dire* in their post-trial motions.

### III. Analysis

The issue of waiver presents a question of law, and, as such, our standard of review is *de novo* and our scope of review is plenary. *Stapas v. Giant Eagle*, 198 A.3d 1033, 1037 (Pa. 2018). As a general matter, it is axiomatic that issues not raised in lower courts are waived for purposes of appellate review, and they cannot be raised for the first time on appeal. Pa.R.A.P. 302(a). This is because, as our Court has oft reminded, "issue preservation is foundational to proper appellate review." *In re F.C. III*, 2 A.3d 1201, 1211 (Pa. 2010). Requiring issues to be properly raised first in the trial court ensures that trial judges have the opportunity to consider a potential appellate issue and correct any error at the first available opportunity. *Id.* at 1212. It also promotes the orderly and efficient use of judicial resources, ensures fundamental fairness to the parties, and accounts for the expense attendant to appellate litigation. *Id.*

In the case at bar, we are constrained to conclude that Appellees waived their argument that the trial court erred by not observing the demeanor and tenor of prospective juror 29 during *voir dire*. Our review of the record indicates that Appellees made no objection in pretrial motions to the trial judge's absence from the Jury Assignment Room during *voir dire*. Likewise, when Appellees made their challenge for-cause to the seating of prospective juror 29, they did not contemporaneously object to the trial judge's absence from the room during *voir dire*. Moreover, review of the transcript of the argument before Judge Folino regarding the challenge to this juror indicates that Appellees' challenge was predicated on the substance of the answers which she gave during *voir dire*, *i.e.*, that her familial relationship with members of the medical profession indicated her potential bias:

**[Appellees' Counsel]**: The argument is that she's the one who brought up her relatives when asked about potential bias. I asked her, "In a close call, would you favor the doctors?" She said "yes."

**THE COURT**: What did you mean by a close call?

**[Appellees' Counsel]**: I meant -

**THE COURT**: 50-50?

**[Appellees' Counsel]**: I didn't quantify it for her.

**THE COURT**: But what is that though?

**[Appellees' Counsel]**: I thought that she understood that I meant that, you know, "If you were on the fence one way or another, as you sit here today, do you think you would favor, the doctor?" And she said "yes." And then again, I think we went from there into really open defiance, and she said, No, I wouldn't defy it.

Would you try to be fair? And they were leading questions that were permitted to be asked to rehabilitate her, and I don't -- I suggest that the -- that in trying to elicit bias, that cross-examination for rehabilitation is inappropriate.

**THE COURT**: Well, your questions were leading, too.

**[Appellees' Counsel]**: I respectfully disagree about the question where I said if it's a close case. Maybe it was, yeah.

N.T., 3/17/17, at 203-05. This record does not support Appellees' claim that, as part of their challenge for-cause, they implicitly raised issues concerning the inability of the trial judge to assess the demeanor of prospective juror 29 as she gave her answers.

The fact that Appellees alleged, in post-trial motions, that the trial court erred in not striking this juror for-cause because the trial court did not have the opportunity to observe the demeanor and tenor of her answers does not preserve this issue for review. Pennsylvania Rule of Civil Procedure 227.1 requires a party to raise an objection at trial,

*inter alia*, by motion, or by a specific, on the record objection in order to obtain post-trial relief:

> (b) Except as otherwise provided by Pa.R.E. 103(a) [governing the admissibility or exclusion of trial evidence], post-trial relief may not be granted unless the grounds therefor,
>
>> (1) if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and
>>
>>> *Note:* If no objection is made, error which could have been corrected in pre-trial proceedings or during trial by timely objection may not constitute a ground for post-trial relief.
>>>
>>> Pa.R.E. 103(a) provides that the specific ground for an overruled objection, or the substance of excluded evidence, need not be stated at or prior to trial, or without having made an offer of proof, if the ground of the objection, or the substance of the evidence sought to be introduced, was apparent from the context.
>>
>> (2) are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.

Pa.R.C.P. 227.1(b).

In *Stapas*, a personal injury action, our Court held that, because of these requirements, the defendant's failure to raise an objection to an alleged error in the jury's computation of damages prior to the jury's dismissal resulted in waiver of that issue on appeal, notwithstanding the fact that the defendant raised the issue in post-trial motions. Our Court reasoned that the failure to object deprived the trial court of the opportunity to have the trial judge order the jury to take curative action and properly compute the

damages before they were dismissed. We concluded that the rationale discussed above — requiring timely objections to be made at trial so that the trial judge can take immediate curative action — compelled a finding of waiver under such circumstances.

Likewise, in the case at bar, Appellees, in making their for-cause challenge to prospective juror 29, failed to raise with the trial judge any issue relating to his lack of observation of this juror's demeanor in answering *voir dire* questions, nor did they request that he personally interview the juror. As a result, the trial judge was deprived of any opportunity to address and resolve this issue before the jury was finally empaneled.

Indeed, in his Rule 1925(a) opinion, the trial judge indicated his express willingness to conduct in-person interviews of prospective juror 29, had Appellees asked that he do so, as it was his customary practice to grant such requests. However, Appellees made no request for such individualized follow-up questioning, nor raised any claim that such an ameliorative measure would be inadequate to cure the alleged harm they now assert was caused by the trial court's absence during *voir dire*, even though the trial court left the question of the specific method it should use to address Appellees' for-cause challenges entirely up to them. N.T., 3/17/17, at 201. Because Appellees ultimately failed to make either a timely objection to the trial court's absence during *voir dire*, or request that the trial court take other curative action for that absence, and, instead, gave their express assent to having the trial court resolve their for-cause challenges solely on the basis of the transcript of the *voir dire* process, they have waived for appellate review any challenge to the use of this methodology.

The Superior Court therefore erred when it rejected the Hospital's claim before that tribunal that the issue of the trial court's lack of personal observation of the demeanor of prospective juror 29 during *voir dire* was waived. The court did not analyze this waiver claim in accordance with the well-established requirements for issue preservation

discussed *supra*. Rather, it essentially addressed the *merits* of the claim, deeming follow-up in-person questioning by a trial judge of a prospective juror – the avenue Appellees chose not to pursue or challenge – to be an insufficient means of discerning a juror's potential bias, thereby relieving Appellees of their obligation to raise the issue before the trial court. This was improper.[11]

For this reason, we vacate the Superior Court's order reversing the trial court. However, as the Superior Court did not address Appellees' other arguments regarding the denial of their motion to exclude the prospective jurors, we remand this matter to that tribunal so that it may consider those remaining issues.

The Order of the Superior Court is vacated, and this case is remanded to that court for further proceedings consistent with this opinion. Jurisdiction relinquished.

Chief Justice Saylor and Justices Dougherty and Mundy join the opinion.

Justice Donohue files a concurring opinion in which Justices Baer, Dougherty, Wecht and Mundy join.

Justice Wecht files a concurring opinion in which Justice Dougherty joins.

---

[11] Because of the nature of our disposition of this appeal, we express no opinion on the Superior Court's merits-based conclusion in this regard.